1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  DARRELL W. SPENCE, State Bar No. 248011
   Supervising Deputy Attorney General
3  EMMANUELLE S. SOICHET, State Bar No. 290754
   JENIFFER A BUNSHOFT, State Bar No. 197306
4  SHATTI A. HOQUE, State Bar No. 350250
   Deputies Attorney General
5   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
6   Telephone: (415) 510-4426
    Fax: (415) 703-5843
7   E-mail: Emmanuelle.Soichet@doj.ca.gov
   *Attorneys for Defendants Governor Gavin Newsom,*
8  *Attorney General Rob Bonta, and State*
   *Superintendent for Public Instruction Tony*
9  *Thurmond*

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  **CHINO VALLEY UNIFIED SCHOOL**              2:24-cv-01941-DJC-JDP
    **DISTRICT, a local educational agency;**
14  **ANDERSON UNION HIGH SCHOOL**
    **DISTRICT, a local educational agency;**
15  **ORANGE COUNTY BOARD OF**
    **EDUCATION, a local educational agency;**      **MEMORANDUM OF POINTS AND**
16  **OSCAR AVILA, an individual; MONICA**         **AUTHORITIES IN SUPPORT OF**
    **BOTTS, an individual; JASON CRAIG, an**      **DEFENDANTS' MOTION TO DISMISS**
17  **individual; KRISTI HAYS, an individual;**     **FIRST AMENDED COMPLAINT FOR**
    **COLE MANN, an individual; VICTOR**            **DECLARATORY AND INJUNCTIVE**
18  **ROMERO, an individual; GHEORGHE**            **RELIEF**
    **ROSCA, JR., an individual; and LESLIE**
19  **SAWYER, an individual,**                      Date:          December 19, 2024
                                                    Time:          1:30 p.m.
20                                Plaintiffs,       Courtroom:     10
                                                    Judge:         The Hon. Daniel J. Calabretta
21
         v.                                         Action Filed: 7/16/2024
22
23  **GAVIN NEWSOM, in his official capacity**
    **as Governor of the State of California;**
24  **ROBERT BONTA, in his official capacity as**
    **Attorney General of the State of California;**
25  **and TONY THURMOND, in his official**
    **capacity as California State Superintendent**
26  **of Public Instruction,**

27                                Defendants.

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................... 1

Background ................................................................................................................ 2

     I.     Assembly Bill 1955, the SAFETY Act.............................................. 2

     II.    Plaintiffs' Complaint ....................................................................... 5

Legal Standard........................................................................................................... 6

Argument ................................................................................................................... 7

     I.     The Court Lacks Subject Matter Jurisdiction to Hear Any of the Claims............. 7

           A.     Parent Plaintiffs' Claims Fail Because They Lack Standing to Sue ........... 7

           B.     The FERPA Claim is Barred Because FERPA Does Not Include a Private Right of Action ............................................................... 9

           C.     The LEA Plaintiffs Lack Standing to Bring Claims under FERPA or the First and Fourteenth Amendments Because They Are Political Subdivisions of the State ........................................... 10

           D.     The Court Lacks Jurisdiction to Hear CVUSD and AUHSD's Claim for Declaratory Relief, Which Raises a Question of State Law Only .......................................................................... 11

           E.     The Governor Enjoys Eleventh Amendment Immunity and Should Be Dismissed ................................................................. 12

     II.    The Court Should Dismiss All of Plaintiffs' Claims Because They Fail to State Cognizable Claims As a Matter of Law ....................................... 13

           A.     Plaintiffs' Claims Amount to a Facial Challenge of the Act.................... 13

           B.     Parent Plaintiffs' Substantive Due Process Claim Fails.......................... 14

                  1.     Parent Plaintiffs' facial challenge fails because they cannot show the Act would be invalid in every circumstance ................ 14

                  2.     Substantive due process does not require schools to notify parents of a student's gender identity, gender expression, or sexual orientation ..................................................... 15

                        a.     Parents' substantive due process rights do not include forced disclosure of students' gender identity and expression to them.................................... 15

                        b.     The Act does not implicate parental rights related to medical care for children................................. 17

                  3.     The Act survives review, whether rational basis or strict scrutiny applies................................................... 19

           C.     Parent Plaintiffs' Free Exercise Claim Fails Because the Act is Neutral and Generally Applicable, and Meets Rational Basis ................ 20

           D.     The Act Does Not Violate FERPA ....................................... 23

i

**TABLE OF CONTENTS**
(continued)

Page

     E.     The LEA Plaintiffs' Claim for Declaratory Relief Based on Federal Constitutional Preemption Fails Because it is Derivative of Parent Plaintiffs' Claims for Violation of the First and Fourteenth Amendments ........................................................................................... 24

     F.     CVUSD and AUHSD's Claim for Declaratory Relief Regarding Their Records-Change Policies Fails Because the Policies Flatly Violate the Act ....................................................................................... 24

Conclusion .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anspach ex rel. Aspach v. City of Phila. Dep't of Pub. Health*
    503 F.3d 256 (3rd Cir. 2007) ....................................................................... 16

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013) ........................................................................ 13

*Blair v. Appomattox Cnty. Sch. Bd.*
    No. 6:23-CV-47, 2024 WL 3165312 (W.D. Va. June 25, 2024) ......................................... 17

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*
    136 F.3d 1360 (9th Cir. 1998) ...................................................................... 10

*Burwell v. Hobby Lobby Stores, Inc.*
    573 U.S. 682 (2014) ............................................................................. 21, 22

*C.R. v. Eugene School Dist. 4J*
    853 F.3d 1142 (9th Cir. 2016) ...................................................................... 16

*Cal. Dep't of Educ. v. Rocklin Unified Sch. Dist.*
    No. S-CV-0052605, Superior Court of California, County of Placer (April 10, 2024) ........................................................................................... 3

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*
    267 F. Supp. 3d 1218 (N.D. Cal. 2017) ............................................................. 23

*Calvary Chapel Bible Fellowship v. Cnty. of Riverside*
    948 F.3d 1172 (9th Cir. 2020) ...................................................................... 14

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* (*Lukumi*)
    508 U.S. 520 (1993) ............................................................................... 20

*City of Reno v. Netflix, Inc.*
    52 F.4th 874 (9th Cir. 2022) ....................................................................... 11

*City of San Juan Capistrano v. Cal. Pub. Util. Comm'n*
    937 F.3d 1278 (9th Cir. 2019) .................................................................... 10, 11

*City of South Lake Tahoe v. Cal. Tahoe Regional Planning Agency*
    625 F.3d 231 (9th Cir. 1980) ..................................................................... 10, 11

*Coal. to Defend Affirmative Action v. Brown*
    674 F.3d 1128 (9th Cir. 2012) ...................................................................... 12

1

2

## **TABLE OF AUTHORITIES**
### (continued)

**Page**

3

*Ctr. for Biological Diversity v. Bernhardt*

4
 946 F.3d 553 (9th Cir. 2019) ................................................................. 7

5
*Doe by & through Doe v. Boyertown Area Sch. Dist.*
 897 F.3d 518 (3rd Cir. 1980) ............................................................... 20

6

7
*Doe v. Delaware Valley Reg'l High Sch. Bd. of Educ.*
 No. CV-00107, 2024 WL 706797 (D.N.J. Feb. 21, 2024) ................................... 17

8
*Doe v. Pine-Richland Sch. Dist.*
 No. 24-00051, 2024 WL 2058437 (W.D. Pa. May 7, 2024) ................................ 8

9

10
*Dousa v. United States Dep't of Homeland Sec.*
 No. 19CV1255-LAB (KSC), 2020 WL 434314 (S.D. Cal. Jan. 28, 2020) ...................... 21

11

12
*Emp't Div. v. Smith*
 494 U.S. 872 (1990) ...................................................................... 20, 21, 22

13
*Fields v. Palmdale Sch. Dist.*
 427 F.3d 1197 (9th Cir. 2005) ......................................................... 16, 17, 19

14

15
*Food & Drug Admin. v. All. for Hippocratic Med.*
 602 U.S. 367 (2024) ........................................................................ 7, 8

16

17
*Foote v. Town of Ludlow*
 No. CV 22-30041-MGM, 2022 WL 18356421 (D. Mass. Dec. 14, 2022) .................... 17, 18

18

19
*Foti v. City of Menlo Park*
 146 F.3d 629 (9th Cir. 1998) ............................................................. 14

20
*Fulton v. City of Phila., Pa.*
 593 U.S. 522 (2021) ...................................................................... 20, 21, 22

21

22
*Gonzaga Univ. v. Doe*
 536 U.S. 273 (2002) ........................................................................ 9

23
*Grimm v. Gloucester Cnty. Sch. Bd.*
 972 F.3d 586 (4th Cir. 2020), (Aug. 28, 2020) .......................................... 18

24

25
*Hammerling v. Google LLC*
 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................. 24

26

27
*Henry v. Universal Tech. Inst.*
 559 F. App'x 648 (9th Cir. 2014) ........................................................ 9

28

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Digimarc Corp. Derivative Litig.*
549 F.3d 1223 (9th Cir. 2008) .................................................................. 9

*Jacobs v. Clark Cty. Sch. Dist.*
526 F.3d 419 (9th Cir. 2008) .................................................................. 22

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Ed.*
622 F.Supp.3d 118 (D. Md. 2022) ........................................................ 17

*John and Jane Parents 1 v. Montgomery County Bd. of Educ.*
78 F.4th 622 (4th Cir. 2023).................................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*
511 U.S. 375 (1994)................................................................................. 6

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................................ 7, 8

*Mae M. v. Komrosky*
No. CVSW2306224, Superior Court of California, County of Riverside (Aug.
2, 2023) .................................................................................................... 3

*McNeil v. Sherwood Sch. Dist. 88J*
918 F.3d 700 (9th Cir. 2019) ................................................................ 16

*Meyer v. Nebraska*
(1923) 262 U.S. 390 .............................................................................. 16

*Moody v. NetChoice, LLC*
144 S. Ct. 2383 (2024) .......................................................................... 14

*Nat'l Audubon Soc'y, Inc. v. Davis*
307 F.3d 835 (9th Cir. 2002) ................................................................ 13

*New York v. Ferber*
58 U.S. 747 (1982)................................................................................. 20

*Norwood v. Harrison*
413 U.S. 455 (1973)............................................................................... 16

*Okanogan School Dist. #105 v. Super. of Pub. Inst.*
291 F.3d 1161 (9th Cir. 2002) ......................................................... 10, 11

*Owasso Indep. Sch. Dist. No. I-011 v. Falvo*
534 U.S. 426 (2002)................................................................................. 9

1

### TABLE OF AUTHORITIES
#### (continued)

2

**Page**

3

*Palomar Pomerado Health Sys. v. Belshe*
    180 F.3d 1104 (9th Cir. 1999) ........................................................................ 10, 11

4

*Parents for Privacy v. Barr*
    949 F.3d 1210 (9th Cir. 2020) ...................................................................... *passim*

5

6

*People v. Chino Valley Unified Sch. Dist.*
    No. CIVSB2317301, Superior Court of California, County of Riverside (Aug.
    23, 2023).......................................................................................................... 3

7

8

*Phyllis v. Superior Ct.*
    183 Cal. App. 3d 1193 (Ct. App. 1986)............................................................ 5

9

10

*Pierce v. Society of Sisters*
    (1925) 268 U.S. 510........................................................................................ 16

11

12

*Pilz v. Inslee*
    No. 3:21-CV-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022) ...................... 14

13

*Regino v. Staley*
    No. 2:23-cv-00032, 2023 WL 4464845 (E.D. Cal. July 11, 2023) ...........................17, 18, 19

14

15

*Reno v. Flores*
    507 U.S. 292 (1993)........................................................................................ 20

16

17

*Roman Cath. Diocese of Brooklyn v. Cuomo*
    592 U.S. 14 (2020).......................................................................................... 21

18

19

*Runyon v. McCrary*
    427 U.S. 160 (1976)........................................................................................ 16

20

*S.B. by & through Kristina B. v. Cal. Dep't of Educ.*
    327 F. Supp. 3d 1218 (E.D. Cal. 2018)............................................................ 13

21

22

*Sato v. Orange Cnty. Dep't of Educ.*
    861 F.3d 923 (9th Cir. 2017)........................................................................... 10

23

24

*Sherbert v. Verner*
    374 U.S. 398 (1963)........................................................................................ 21

25

*Short v. New Jersey Dep't of Educ.*
    No. 23-32205, 2024 WL 3424729 (D. N.J. July 16, 2024)................................. 8

26

27

*Skelly Oil Co. v. Phillips Petroleum Co.*
    339 U.S. 667 (1950)........................................................................................ 11

28

1

### TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Smith on behalf of C.M. v. Tacoma Sch. Dist.*
476 F. Supp. 3d 1112 (W.D. Wash. 2020)................................................................ 9

4

5

*SmithKline Beecham Corp. v. Abbott Laboratories*
740 F.3d 471 (9th Cir. 2014)............................................................................... 18

6

*Snoeck v. Brussa*
153 F.3d 984 (9th Cir. 1998)............................................................................... 13

7

8

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001)................................................................................. 6

9

10

*Stormans, Inc. v. Wiesman*
794 F.3d 1064 (9th Cir. 2015)............................................................................. 21

11

*Tandon v. Newsom*
593 U.S. 61 (2021)........................................................................................... 21

12

13

*Taylor v. Vt. Dep't of Educ.*
313 F.3d 768 (2d Cir. 2002)................................................................................. 9

14

15

*Thomas v. Anchorage Equal Rts. Comm'n*
220 F.3d 1134 (9th Cir. 2000)............................................................................. 12

16

*Thomas v. Mundell*
572 F.3d 756 (9th Cir. 2009)............................................................................... 10

17

18

*Tingley v. Ferguson*
47 F.4th 1055 (9th Cir. 2022)............................................................................. 18

19

20

*Troxel v. Granville*
530 U.S. 57 (2000)........................................................................................... 17

21

*United States v. Salerno*
481 U.S. 739 (1987)................................................................................ 14, 15, 22

22

23

*Va. House of Delegates v. Bethune-Hill*
139 S. Ct. 1945 (2019)........................................................................................ 7

24

25

*Warren v. Fox Family Worldwide, Inc.*
328 F.3d 1136 (9th Cir. 2003)............................................................................... 6

26

*Whitmore v. Ark.*
495 U.S. 149 (1990)........................................................................................... 7

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Williams v. Kincaid*
  45 F.4th 759 (4th Cir. 2022) ............................................................................................. 19

*Wisconsin v. Yoder*
  406 U.S. 205 (1972) ................................................................................................... 21, 22

*Ex parte Young*
  209 U.S. 123 (1908) ......................................................................................................... 12

*Zamani v. Carnes*
  491 F.3d 990 (9th Cir. 2007) .............................................................................................. 6

**STATUTES**

20 U.S.C.
  § 1232g ................................................................................................................................ 9
  § 1232g(a) ........................................................................................................................... 9
  § 1232g(a)(1)(A) ............................................................................................................... 23
  § 1232g(a)(2) ..................................................................................................................... 24
  § 1232g(a)(4)(A) ............................................................................................................... 23
  § 1232g(a)(4)(B)(i) ...................................................................................................... 23, 25

28 U.S.C.
  § 1331 .................................................................................................................................. 9
  § 1367(a) ........................................................................................................................... 12
  § 1367(c) ........................................................................................................................... 12
  § 2201(a) ........................................................................................................................... 11

Cal. Ed. Code
  § 217 ........................................................................................................................ 4, 15, 20
  § 220.1 ................................................................................................................................. 4
  § 220.3 ............................................................................................................................... 20
  § 220.3(a) ............................................................................................................................ 4
  § 220.5 ................................................................................................................................. 4
  § 220.5 ............................................................................................................................... 20
  § 49061(b) ......................................................................................................................... 25
  § 49062.5 ........................................................................................................................... 25
  § 49069.7 ........................................................................................................................... 25
  § 49070 .............................................................................................................................. 25
  § 49602 ................................................................................................................................ 5
  § 51101(a)(1) ....................................................................................................................... 5
  § 51101(a)(10) ..................................................................................................................... 4

Declaratory Judgment Act ........................................................................................................ 11

### TABLE OF AUTHORITIES
(continued)

Page

Family Educational Rights and Privacy Act (FERPA)........................................................... *passim*

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................................ *passim*

Eleventh Amendment ...............................................................................2, 12, 13

Fourteenth Amendment ............................................................................ *passim*

Article III................................................................................................ 7, 9

**COURT RULES**

Fed. R. Civ. P. 12(b)(1)........................................................................ 2, 6

Fed. R. Civ. P. 12(b)(6)........................................................................ 2, 6

**OTHER AUTHORITIES**

34 C.F.R.
    § 99.10(a).............................................................................................. 4

Assembly Bill 1955 ......................................................................... *passim*

ix

Defs.' Motion to Dismiss FAC (2:24-cv-01941-DJC-JDP)

**INTRODUCTION**

Lesbian, gay, bisexual, transgender, queer, and questioning (LGBTQ) students in California deserve to feel safe, supported, and affirmed for who they are at school. This includes a right to express themselves freely at school without fear, punishment, or retaliation, including the fear that teachers might "out" them without their permission. But since 2023, a number of local school districts have enacted "forced outing" policies that expressly single out transgender and gender nonconforming students for discriminatory treatment, undermining that safe space for these youth. These policies require teachers and school staff to notify parents when a student requests to change their name or pronouns at school to reflect a different gender identity, even if notifying the parents puts the student at risk of physical, psychological, or emotional harm.

Recognizing that the decision of when and to whom to "come out" is a deeply personal one, that family support is important for LGBTQ students' well-being, but that forcibly outing youth before they are ready can be harmful, the State Legislature adopted Assembly Bill 1955 to prohibit school "forced outing" policies. The bill, known as the Support Academic Futures and Educators for Today's Youth Act (SAFETY Act or Act), does two things: first, it mandates the State develop resources to help families and schools create supportive environments for LGBTQ students; second, it prohibits public schools in California from forcing staff members to disclose a student's sexual orientation, gender identity, or gender expression to others without the student's consent (unless otherwise required by State or federal law) or from penalizing staff for complying with State anti-discrimination law. The Act does not ban all disclosure of students' private information. Rather, it allows school districts to craft their own policies for when disclosure of a student's sexual orientation, gender expression, and gender identity is *permissible*; these policies just cannot *mandate* disclosure without student consent.

Plaintiffs—a group of eight parents, two school districts, and a county board of education—filed this lawsuit to challenge the Act on its face and in its entirety. But the suit suffers from numerous jurisdictional deficiencies that bar all of their claims. The parent plaintiffs lack standing to sue, since they have alleged only moral objections to the Act and not injury from it, while the entities lack standing because they are political subdivisions of the State and thus barred

1

1    from bringing constitutional claims against the State.  In addition, their joint Family Educational

2    Rights and Privacy Act (FERPA) claim is foreclosed because FERPA does not include a private

3    right of action.  Given these deficiencies, the Court does not have subject matter jurisdiction to

4    hear the final claim by the school district plaintiffs for declaratory relief regarding the validity of

5    their current policies; this type of claim does not carry freestanding jurisdiction, does not present

6    a federal question, and fails to meet the standard for supplemental jurisdiction.  Further, the

7    Governor has Eleventh Amendment sovereign immunity from all the claims.

8         Because it lacks jurisdiction, the Court's inquiry should stop there.  But the claims also all

9    lack substantive merit.  Parent Plaintiffs' Fourteenth Amendment substantive due process claim

10   fails because there is no parental right under the U.S. Constitution to forced disclosure of their

11   child's gender identity, gender expression, or sexual orientation by school districts.  Also, the

12   Ninth Circuit and other courts have repeatedly declined to expand the narrow substantive due

13   process right of parents to choose their child's educational forum into an unbridled right to

14   superintend school policy and know or control everything that students discuss at school.  Parent

15   Plaintiffs' First Amendment free exercise claim is similarly meritless, since the parents cannot

16   show that the Act is not neutral or generally applicable, and thus rational basis applies.  Plaintiffs'

17   FERPA claim also fails because the Act does not limit access to student records and, even if it

18   did, it clearly states that it does not apply to disclosure mandated by federal law, including

19   FERPA.  The preemption claim fails because it is derivative of the parents' failed claims.  And

20   the claim by the districts for declaratory relief regarding the validity of their policies fails because

21   the Act passes constitutional muster, and the policies violate the Act.

22        Ultimately, Plaintiffs' claims are so deficient that it is obvious this lawsuit is a controversy

23   in search of a case.  Because they have not found one, the Court should grant the motion to

24   dismiss without leave to amend under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

25                              **BACKGROUND**

26   **I.    ASSEMBLY BILL 1955, THE SAFETY ACT**

27        This year, the California Legislature responded to findings of a growing number of

28   "[a]ttacks on the rights, safety, and dignity of transgender, gender-expansive, and other LGBTQ+

2

youth" in California and across the country, as well as a "rise in bullying, harassment, and discrimination" against these youth.  Request for Judicial Notice (RJN), Ex. 1 at § 2(i).  The Legislature found that this harassment has been preventing LGBTQ students "from accessing safe and supportive learning environments" critical to their well-being and success.  *Id.* at § 2(m)-(n).[1]

Of the harassment that LGBTQ youth face, the Legislature singled out school policies that "forcibly out" students by disclosing their LGBTQ identities to their families without their consent.  *Id.* at § 2(e).  By 2023, a number of school districts in California had enacted these "forced outing" policies, which sometimes required school employees to "out" students even if doing so risked physical, emotional, or psychological harm to the student.[2]  But the Legislature found that choosing when and to whom to come out "are deeply personal decisions, impacting health and safety as well as critical relationships, that every LGBTQ+ person has the right to make for themselves."  *Id.* at § 2(b).  Research reviewed by the Legislature shows that LGBTQ youth generally benefit when they receive family support, but forcibly outing students to their parents without their consent and "before they are ready" can be extremely harmful.[3]  *Id.* at § 2(d).  Ultimately, the Legislature found school forced-outing policies undermine students' ability to build trust with their parents, violate students' rights to privacy and self-determination, and

---

[1] In adopting the legislation, the Legislature reviewed extensive data regarding poor mental health outcomes of LGBTQ and transgender youth associated with discrimination, bullying, and anti-queer policies.  RJN Ex. 2 at 5-8 (reviewing extensive findings from surveys and studies).  These outcomes were directly tied to whether youth had support and acceptance at home or school.  For instance, research before the Legislature showed that rejection of a student's transgender identity or sexual orientation by family members was associated with negative health outcomes (such as suicide, depression, substance abuse, homelessness, and sexual risk-taking).  *Id.* at 6.  Similarly, a national survey showed the overwhelming majority of LGBTQ students report feeling unsafe and targeted at school when schools failed to provide a safe and welcoming environment, with devastating impacts on their mental health, attendance, disciplinary record, academic performance, and prospects for post-secondary education.  *Id.* at 6-7.

[2] *See, e.g.*, *Cal. Dep't of Educ. v. Rocklin Unified Sch. Dist.*, No. S-CV-0052605, Superior Court of California, County of Placer (April 10, 2024); *People v. Chino Valley Unified Sch. Dist.*, No. CIVSB2317301, Superior Court of California, County of Riverside (Aug. 23, 2023) (*Chino Valley I*); *Mae M. v. Komrosky*, No. CVSW2306224, Superior Court of California, County of Riverside (Aug. 2, 2023).

[3] In particular, the Legislature reviewed comments and data provided by the bill's supporters that "[s]tudents often refuse external support out of fear of being outed to their parents," including refusing mental health supports.  RJN Ex. 2 at 8. (citing finding that "44% of LGBTQI+ children who never reported harassment at school are fearful that school staff will out them to their family").  Advocates further informed the Legislature that "[t]hese concerns are often justified, as 57% of LGBTQI+ youth report that they have faced parental rejection" ranging "from parents mocking their child's LGBTQI+ identity to more extreme actions that impact the well-being of LGBTQI+ children, including physical abuse and being kicked out of the home."  *Id.*

3

1    prevent students from freely expressing themselves at school without fear of being outed.  *Id.* at §

2    2(e)-(g) (noting students have a constitutional right to privacy and that courts have affirmed the

3    right of young people to keep personal information private).

4         By contrast, the Legislature found that "[a]ffirming school environments significantly

5    reduce the odds of transgender youth attempting suicide," improve education outcomes for

6    transgender and gender non-conforming youth, and lead to "a number of positive outcomes" for

7    all LGBTQ youth, including lower rates of depression and "being less likely to feel unsafe at

8    school because of their gender expression or sexual orientation, or both."  *Id.* at § 2(j)(1)-(3).

9    Against this backdrop, the Legislature found that all students deserve to be "safe, supported, and

10   affirmed for who they are at school."  *Id.* at § 2(a).

11        To address these concerns of harassment and to promote supportive school environments,

12   the Legislature enacted Assembly Bill 1955, known as the Support Academic Futures and

13   Educators for Today's Youth Act or the "SAFETY Act" (Act).  The law, which takes effect on

14   January 1, 2025, does two things: First, it requires the California Department of Education to

15   develop resources to assist families and schools in creating supportive environments for LGBTQ

16   students.  RJN Ex. 1 at § 3 (adding Cal. Educ. Code § 217).  Second, it expressly prohibits public

17   schools in California from adopting or enforcing forced-outing policies.  *Id.* at §§ 4-5.

18   Specifically, it prohibits school staff from being "required to disclose any information related to a

19   pupil's sexual orientation, gender identity, or gender expression to any other person without the

20   pupil's consent unless otherwise required by state or federal law."  *Id.* at § 5 (adding Cal. Educ.

21   Code § 220.3(a)).  And it prohibits school districts from enacting such policies or retaliating

22   against staff who support students in the exercise of their rights under the California Education

23   Code, including its anti-discrimination provisions. *Id.* at §§ 4, 6 (Cal. Ed. Code §§ 220.1, 220.5).

24        The Act does not bar the disclosure of this private information in every circumstance.

25   Rather, the Act specifically allows for *mandatory* disclosure of information when the student

26   consents or when "required by state or federal law," such as if disclosure to parents is required by

27   the Family Educational Rights Privacy Act (FERPA) or California law.  *See* RJN Ex. 1 at §§

28   220.3(a), 220.5(a); *see e.g.,* 34 C.F.R. § 99.10(a) (parent right to access student records); Cal.

4

Defs.' Motion to Dismiss FAC (2:24-cv-01941-DJC-JDP)

Educ. Code §§ 51101(a)(10) (same), 51101(a)(1) (parent right to visit their student's classrooms). In addition, in focusing only on forced-outing policies, it allows school districts to adopt nuanced policies that allow—but do not mandate—disclosure in certain circumstances, consistent with other applicable laws such as State and federal privacy and anti-discrimination protections.

Notably, the Act does not prohibit schools from disclosing to parents when a student's health and well-being are at risk. *Contra* FAC ¶ 5. Under State law, schools may notify parents or guardians—and in some instances, may have a duty to notify them—when staff learn of significant risks to student safety. *See, e.g.*, Cal. Ed. Code § 49602 (confidential communications to school counselor may be disclosed to parents if counselor "has reasonable cause to believe disclosure is necessary to avert a clear and present danger"); *Phyllis v. Superior Ct.*, 183 Cal. App. 3d 1193, 1196 (Ct. App. 1986) (school had a duty to notify parents that student had been sexually assaulted at school). The Act does not impact that duty or prevent schools from notifying parents of concrete safety risks. Nor does it prohibit optional disclosure of sexual orientation or gender identity in relation to those safety risks. Thus, a school district could adopt a policy that, consistent with State privacy protections, allows staff to disclose the student's gender identity or sexual orientation without the student's consent in those specific instances when there is a compelling need based on a threat to student's physical or mental well-being. The Act simply prohibits a school district from forcing staff to do so without the student's consent.

## II.   PLAINTIFFS' COMPLAINT

Plaintiffs—a group of parents, school districts, and a county board of education—filed suit on July 16, 2024, bringing a facial challenge to enjoin the Act statewide before it takes effect. ECF No. 1. They filed a First Amended Complaint (FAC) on August 8, 2024. ECF No. 14.

Oscar Avila, Monica Botts, Jason Craig, Kristi Hays, Cole Mann, Victor Romero, Gheorghe Rosca, Jr., and Leslie Sawyer (collectively Parent Plaintiffs) are all parents of children in public schools. FAC ¶¶ 13-20. They are devout Christians who believe "that God created man and woman as distinct, immutable genders" and who object on "conscience and religious grounds to their public schools withholding information about changes to their child's gender identity from them." *Id.* at ¶¶ 13-21. The Parent Plaintiffs assert three claims: that the Act violates their

5

1    substantive due process rights as parents under the Fourteenth Amendment of the U.S.

2    Constitution (claim 1); that it violates their First Amendment right to free exercise of religion

3    (claim 2); and that it violates the Family Educational Rights and Privacy Act (FERPA) (claim 3).

4    *Id.* at ¶¶ 65-86.[4]  They bring their claims as individuals on their own behalf.

5       Chino Valley Unified School District (CVUSD), Anderson Union High School District,

6    (AUHSD), and the Orange County Board of Education (OCBOE; collectively, LEA Plaintiffs)[5]

7    are local educational agencies (LEAs) in California.  *Id.* at ¶¶ 10-12.  In addition to joining the

8    FERPA claim, they also bring a claim that the Act is preempted by the First and Fourteenth

9    Amendments (claim 4).  CVUSD and AUHSD also seek a declaration that policies they have

10    adopted—requiring that staff notify parents when an employee "becomes aware that a student is

11    requesting to change any information contained in the student's official or unofficial records"—

12    either fall outside the scope of the Act or do not violate it (claim 5).  *Id.* at ¶¶ 59, 87-96.

13                       **LEGAL STANDARD**

14       The party asserting federal subject matter jurisdiction bears the burden of establishing its

15    existence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A

16    jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or

17    based upon extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

18    Cir. 2003).  A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim "where

19    there is no cognizable legal theory or an absence of sufficient facts alleged to support a

20    cognizable legal theory." *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007).  In considering if

21    a complaint states a claim, a court must accept as true all of the material factual allegations in it,

22    but need not accept as true allegations that contradict matters properly subject to judicial notice"

23    or "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*

24    *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

25

---

26    [4] Plaintiffs' factual allegations focus on issues of gender identity.  *See* FAC ¶¶ 25-64.  However, their claims have no limitation and challenge all aspects of the Act, including its provisions directing the State to develop resources on supportive environments for LGBT students and protecting school staff from
27    retaliation, as well as its prohibition on the disclosure of student's sexual orientation and gender expression without student consent.  *See* FAC at ¶¶ 72, 78, 86, 93; *see also id.* at 16.
28    [5] OCBOE is a county board of education and not a school district.  *Contra* FAC ¶ 12.

1

**ARGUMENT**

2

I.   **THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR ANY OF THE CLAIMS**

3

    A.   **Parent Plaintiffs' Claims Fail Because They Lack Standing to Sue**

4

       Plaintiffs' first three claims—alleging violations of the Parent Plaintiffs' constitutional

5

rights and FERPA—must be dismissed because they lack standing.  Whether a plaintiff has

6

standing to sue under Article III of the United States Constitution is "the threshold question" and

7

a bedrock constitutional requirement in any case before the court.  *Food & Drug Admin. v. All.*

8

*for Hippocratic Med.*, 602 U.S. 367, 378 (2024).  To establish standing necessary for a justiciable

9

case or controversy, a plaintiff must show: (1) a concrete and particularized injury in fact; (2) a

10

causal connection between the injury and defendant's conduct; and (3) a likelihood that the injury

11

will be redressed by a favorable decision.  *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct.

12

1945, 1950 (2019); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "A plaintiff

13

must establish standing for every claim it wishes to challenge, even where a plaintiff raises the

14

same legal challenge to multiple sections of the same statute."  *Ctr. for Biological Diversity v.*

15

*Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (citation omitted).  Here, Plaintiffs have not alleged

16

any injury stemming from the Act, much less one traceable to Defendants.

17

       To meet the injury in fact requirement, plaintiffs must demonstrate an invasion of a legally

18

protected interest that is both (1) "concrete and particularized" to them and (2) "actual or

19

imminent," and not hypothetical or conjectural.  *Lujan*, 504 U.S. at 560.  "Allegations of possible

20

future injury" are not sufficient.  *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990).  Neither are claims

21

that rest on an "abstract injury" stemming from a "only a general legal, moral, ideological, or

22

policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381.

23

       Parent Plaintiffs bring three claims on their own behalf but have not alleged any injury

24

giving rise to those claims.  They have not shown that the Act has directly impacted them or

25

shown a substantial risk that it will in the future.  In fact, they allege no connection to the law at

26

all beyond a general moral objection to the existence of transgender people and to school policies

27

that fail to require school staff to disclose a student's gender identity or gender nonconformity no

28

matter the risk of harm to the child.  *See* FAC at ¶¶ 13-21 (alleging that they are parents of public

7

1   school students, are devout Christians who believe "God created man and woman as distinct,

2   immutable genders[,]" and that they "object[] on both conscience and religious grounds to their

3   public schools withholding information about changes to their child's gender identity from

4   them").  But this is not enough to confer standing.  *All. for Hippocratic Med.*, 602 U.S. at 386.

5          In fact, Parent Plaintiffs have the same standing deficiencies as the parents in *John and*

6   *Jane Parents 1 v. Montgomery County Bd. of Educ.*, 78 F.4th 622 (4th Cir. 2023), *cert. denied sub*

7   *nom. Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 144 S. Ct. 2560 (2024).  There, plaintiffs

8   sued their children's school district over its policy not to disclose a student's gender identity to a

9   parent(s) whom the students had identified were "nonsupportive."  *Id.* at 631.  The court held

10  plaintiffs lacked standing because they failed to allege any injury since there was no allegation

11  that their children had gender support plans (subject to the challenged policy) or discussions with

12  their schools about a social transition such that any information was withheld from the parents.

13  *Id.* at 629-30 (rejecting speculative argument that "for all [they] know, some of their own children

14  could be" or "might soon be" students with a gender support plan); *see also Doe v. Pine-Richland*

15  *Sch. Dist.*, No. 24-00051, 2024 WL 2058437, *4-9, (W.D. Pa. May 7, 2024); *Short v. New Jersey*

16  *Dep't of Educ.*, No. 23-32205, 2024 WL 3424729, *5-9 (D. N.J. July 16, 2024).  Similarly here,

17  no Parent Plaintiff has alleged that their child is LGBTQ or gender non-conforming or has

18  requested a name/pronoun change at school, or that the parent has reason to suspect their child

19  may do so.  Nor have they alleged that their child would do so without consenting to disclosure of

20  that information to their parents.  Thus, the Parent Plaintiffs have failed to establish injury in fact

21  sufficient to confer standing and their claims (first, second, third) should be dismissed.[6]

22          [6] Moreover, even if Parent Plaintiffs had alleged some injury, they would still fail to establish
    causation or redressability.  This is because any possible injury based on not disclosing information would
23  stem from either a decision by an individual educator(s) in their school district (e.g., to protect a child from
    abuse, as required by child abuse reporting laws) or by a policy in their local school districts that
24  establishes when disclosure is permissible, and not the Act itself.  *See Lujan*, 504 U.S. at 560-62; *All. for*
    *Hippocratic Med.*, 602 U.S. at 383 (plaintiffs cannot "rely on speculation about the unfettered choices
25  made by independent actors not before the courts" to establish causation).  The Act establishes only that a
    school district may not have a forced outing policy. The Parent Plaintiffs have not established that any
26  school district policies are attributable to the Act or that, without the Act, their districts would have
    policies requiring disclosure.  And to the extent this hypothetical injury was predicated on a district policy
27  that requires student consent in most instances, the chain of causation would be doubly speculative and
    attenuated because it would also rely on the independent actions of their children not consenting to
28  disclosure.

1    **B.    The FERPA Claim is Barred Because FERPA Does Not Include a Private
         Right of Action**

2

3         Plaintiffs' joint FERPA claim is also foreclosed in its entirety because they do not have the

4    ability to seek any relief under the statute.  Article III of the Constitution gives the federal courts

5    the power to hear cases "arising under" federal statutes.  *See* 28 U.S.C. § 1331 (district courts

6    original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

7    United States").  But if a federal statute does not contain a private right of action, it does not give

8    rise to federal jurisdiction and is properly dismissed for lack of subject matter jurisdiction.  *In re*

9    *Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1229 (9th Cir. 2008) (citations omitted).

10        All Plaintiffs collectively bring the third claim for relief under the access provisions of the

11   FERPA contained at 20 U.S.C. § 1232g.  FAC ¶¶ 80-86.  But the Supreme Court has expressly

12   held that FERPA does not contain any individual private cause of action.  *Gonzaga Univ. v. Doe*,

13   536 U.S. 273, 276, 287, 290 (2002) ("FERPA's nondisclosure provisions contain no rights-

14   creating language, they have an aggregate, not individual, focus, and they serve primarily to

15   direct the Secretary of Education's distribution of public funds to educational institutions. They

16   therefore create no rights enforceable under § 1983."); *Owasso Indep. Sch. Dist. No. I-011 v.*

17   *Falvo*, 534 U.S. 426, 431 (2002) (explaining that *Gonzaga* governed the issue of whether FERPA

18   broadly contains a private right of action); *see also Henry v. Universal Tech. Inst.*, 559 F. App'x

19   648, 650 (9th Cir. 2014) (holding FERPA does "not provide for a private right of action").  This

20   applies specifically to the access-records provisions in § 1232g(a) that forms the basis of the third

21   cause of action.  *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 783 (2d Cir. 2002); *Smith on*

22   *behalf of C.M. v. Tacoma Sch. Dist.*, 476 F. Supp. 3d 1112, 1136 (W.D. Wash. 2020) (dismissing

23   parent's claim under 20 U.S.C. § 1232g(a) for failing to provide access to student files because

24   plaintiff "has no private right of action to remedy an alleged FERPA violation").[7]  Because

25

26        [7] Moreover, the Court lacks subject matter jurisdiction on this claim because it is "completely
     devoid of merit as not to involve a federal controversy."  *See Falvo*, 534 U.S. at 431.  As explained below,
27   *infra*, at page 23, the Act has no bearing on parents' right to access educational records under FERPA; the
     law governs simply whether school districts can require staff to forcibly out LGBTQ students.  And even
     if the Act did somehow implicate educational records under FERPA, its savings clause clearly guarantees
28   that parents' rights under FERPA are protected.  RJN Ex. 1 at §§ 220.3(a), 220.5(a).

9

Defs.' Motion to Dismiss FAC (2:24-cv-01941-DJC-JDP)

1   Plaintiffs lack a private right of action to sue under FERPA, the Court lacks subject matter

2   jurisdiction over this claim, which should be dismissed.

3       **C.   The LEA Plaintiffs Lack Standing to Bring Claims under FERPA or the First and Fourteenth Amendments Because They Are Political Subdivisions of the State**

4

5       The LEA Plaintiffs lack standing to bring their claims that FERPA preempts the Act (claim

6   3) and that the Act violates the First and Fourteenth Amendments (claim 4) in this Court.

7       The Ninth Circuit has consistently held that a political subdivision of the State lacks

8   standing to sue the State itself or another political subdivision of the State to challenge State law

9   on federal constitutional grounds. *See, e.g.*, *City of South Lake Tahoe v. Cal. Tahoe Regional*

10  *Planning Agency*, 625 F.3d 231, 233 (9th Cir. 1980) (noting it is well established that political

11  subdivisions of a state "may not challenge the validity of a state statute under the Fourteenth

12  Amendment"); *City of San Juan Capistrano v. Cal. Pub. Util. Comm'n*, 937 F.3d 1278, 1280 (9th

13  Cir. 2019) ("[W]e have consistently held that political subdivisions lack standing to challenge

14  state law on constitutional grounds in federal court."); *Burbank-Glendale-Pasadena Airport Auth.*

15  *v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) ("per se rule" that political subdivisions

16  lack standing to challenge statutes of the state or one of its political subdivisions includes

17  challenges under the Supremacy Clause); *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d

18  1104, 1108 (9th Cir. 1999) (political subdivision lacks standing to bring an action against the

19  State "to the extent that its action challenges the validity of state regulations on due process and

20  Supremacy Clause grounds") (*Palomar*).  This standing rule for political subdivisions suing the

21  State also applies to claims alleging that State law violates a federal statute. *Thomas v. Mundell*,

22  572 F.3d 756, 759 (9th Cir. 2009) (applying rule to plaintiffs' claims that state law violated Title

23  VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981).

24      In California, public school districts, county offices of education, and local boards of

25  education are arms of the State. *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th

26  Cir. 2017).  The Ninth Circuit has confirmed that school districts are considered political

27  subdivisions for purposes of this standing rule.  For example, in *Okanogan School Dist. #105 v.*

28  *Super. of Pub. Inst.*, 291 F.3d 1161 (9th Cir. 2002) (*Okanogan*), the court applied the rule to a

10

1  school district in a state, like California, where a school district is an arm of the state. *Id.* at 1165-

2  1166 ("*South Lake Tahoe* controls. There we held that a political subdivision of a state, which a

3  school district unquestionably is in Washington, may not challenge the validity of a state statute

4  under the Fourteenth Amendment" in federal court"); *see also City of San Juan Capistrano,* 937

5  F.3d at 1280, n.1 (noting Ninth Circuit has held that a school district lacks standing to sue state

6  officials). This prohibition also applies to claims against state officials. *See, e.g., Palomar*, 180

7  F.3d at 1108 (rule applies to actions against named state officials, where "action is in fact an

8  action against the State of California"); *Okanogan*, 291 F.3d 1161 at 1162-1165 (applying rule to

9  school district's suit against Superintendent of Public Instruction).

10  Here, the LEA Plaintiffs have sued the Governor, Attorney General, and Superintendent of

11  Public Instruction, based on underlying allegations that the Act violates the First and Fourteenth

12  Amendments, and is preempted by federal law. Accordingly, the LEA Plaintiffs lack standing to

13  bring their claims under FERPA or the First and Fourteenth Amendments.

### D. The Court Lacks Jurisdiction to Hear CVUSD and AUHSD's Claim for Declaratory Relief, Which Raises a Question of State Law Only

15  The Court also lacks jurisdiction to hear CVUSD and AUHSD's request for a declaration

16  that their current policies either fall outside the scope of or do not violate the Act. While the

17  districts bring this claim pursuant to the Declaratory Judgment Act, it does not provide federal

18  jurisdiction, where, as here, the claim arises under state law.

19  The Declaratory Judgment Act gives "any court of the United States" the power to declare

20  the rights and legal relations of an interested party. 28 U.S.C. § 2201(a). That law's operation is

21  "procedural only," and while it "enlarge[s] the range of remedies available in the federal courts,"

22  it does not extend their jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671-

23  674 (1950). Thus, declaratory relief is only a remedy and does not provide a separate basis for

24  federal jurisdiction. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

25  Unlike the other claims, CVUSD and AUHSD's declaratory relief claim does not allege

26  that the Act violates and/or is preempted by federal law, but rather asks the Court to declare that

27  the districts' policies either fall outside of the Act's scope or do not violate it. Because the Court

28  lacks jurisdiction over the other federal claims, and those claims fail on their merits in any event,

11

1    the Court lacks jurisdiction over this remaining claim as it does not present a federal question.

2         Moreover, even if any of Parent Plaintiffs' claims survive this motion, the Court still lacks

3    jurisdiction to hear the declaratory relief claim because Plaintiffs fail to meet the requirements for

4    supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a) ("district courts shall have supplemental

5    jurisdiction over all other claims that are so related to claims in the action within such original

6    jurisdiction that they form part of the same case or controversy.")  This is because the declaratory

7    relief claim, which does not challenge the Act, does not form part of the same case or controversy

8    as Plaintiffs' other claims, which are premised on the underlying allegation that the Act should be

9    enjoined because it violates federal law.  And, even if the declaratory relief claim were deemed to

10   form part of the same case or controversy as the other claims, the Court should decline to exercise

11   supplemental jurisdiction because the claim raises a novel issue of State law regarding the

12   interpretation of a recently enacted statute that State courts have yet to weigh in on.  *See* 28

13   U.S.C. § 1367(c).  Moreover, because CVUSD and AUHSD lack standing to bring their federal

14   claims, exercising supplemental jurisdiction would keep them in the action based solely on a

15   declaratory relief claim arising under State law.[8]  For these reasons, it should be dismissed.

16        **E.    The Governor Enjoys Eleventh Amendment Immunity and Should Be Dismissed**

17        Governor Newsom should be dismissed from this case under the Eleventh Amendment

18   because he does not have any responsibility for enforcement of the Act.

19        The Eleventh Amendment generally bars federal lawsuits brought against a state. "It does

20   not, however, bar actions for prospective declaratory or injunctive relief against state officers in

21   their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative*

22   *Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155-

23   56 (1908)).  For this exception to apply, the official must have "some connection" with

24   enforcement of the challenged act. *Ex parte Young*, 209 U.S. at 157.  The connection "must be

25   fairly direct; a generalized duty to enforce state law or general supervisory power over the

26   persons responsible for enforcing the challenged provision will not subject an official to suit."

27

28        [8] For similar reasons, the claim is unripe.  *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000).

12

1  *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (citation omitted).  The relevant inquiry then

2  is "whether a named state official has direct authority and practical ability to enforce the

3  challenged statute."  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-847 (9th Cir. 2002)

4  (barring injunctive and declaratory relief claims against California Governor and cabinet official,

5  as they did not "have the requisite enforcement connection" to challenged ballot proposition).

6        Plaintiffs have failed to allege the "direct" connection between Governor Newsom and the

7  Act challenged in this lawsuit required to overcome Eleventh Amendment immunity.  They do

8  not allege that he has any direct role with respect to enforcing the Act.  Instead, they simply

9  allege that "the California Constitution vests 'the supreme executive power of the State' in the

10  Governor," and that he "shall see that the law is faithfully executed."  FAC ¶¶ 35, 220 (citing Cal.

11  Const. art. V, § 1).  But the Ninth Circuit and other California district courts have repeatedly held

12  this generalized duty to enforce California law is insufficient to overcome Eleventh Amendment

13  immunity.  *See*, *e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937,

14  943 (9th Cir. 2013) (holding governor was entitled to Eleventh Amendment immunity in suit

15  "because his only connection to [the challenged statute] is his general duty to enforce California

16  law"); *Davis*, 307 F.3d at 847; *S.B. by & through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp.

17  3d 1218, 1236 (E.D. Cal. 2018) (holding the governor enjoyed immunity because he "has no

18  alleged factual connection to the enforcement of the California Education Code, other than a

19  general duty to enforce California law as the governor").  Because Plaintiffs cannot overcome

20  Eleventh Amendment sovereign immunity, the Governor should be dismissed.

21  **II.   THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' CLAIMS BECAUSE THEY FAIL**
22        **TO STATE COGNIZABLE CLAIMS AS A MATTER OF LAW**

23        **A.   Plaintiffs' Claims Amount to a Facial Challenge of the Act**

24        Apart from CVUSD and AUHSD's claim for declaratory relief (claim 5), Plaintiffs

25  challenge the Act on its face, seeking to strike down the law in its entirety.  *See* FAC at ¶¶ 72, 78,

26  86, 93 (seeking "relief invalidating and restraining enforcement of AB 1955"); *id.* at p. 16

27  (broadly seeking "[a]n order and judgment declaring that AB 1955 violates" the Constitution and

28  FERPA, and "temporarily, preliminary, and permanently enjoining and prohibiting Defendants

13

Defs.' Motion to Dismiss FAC (2:24-cv-01941-DJC-JDP)

1    from enforcing AB 1955"); *see Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)

2    (facial challenge seeks to "invalidate[] the law itself"); *Pilz v. Inslee*, No. 3:21-CV-05735-BJR,

3    2022 WL 1719172, at *3 (W.D. Wash. May 27, 2022), *aff'd*, No. 22-35508, 2023 WL 8866565

4    (9th Cir. Dec. 22, 2023) (complaint set forth only a facial challenge to state law because it did

5    "not adequately allege that the law is being applied in an unconstitutional manner").  In a facial

6    challenge, the court must "consider only the text of the [law], not its application."  *Calvary*

7    *Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020).  Plaintiffs'

8    decision to bring a facial challenge "comes at a cost."  *Moody v. NetChoice, LLC*, 144 S. Ct.

9    2383, 2397 (2024).  This is because a facial challenge is "the most difficult challenge to mount

10   successfully, since the challenger must establish that no set of circumstances exists under which

11   the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

12          **B.      Parent Plaintiffs' Substantive Due Process Claim Fails**

13          Parent Plaintiffs allege the Act violates their parental rights under the Due Process Clause

14   of the Fourteenth Amendment, because it prohibits school districts from adopting or enforcing

15   forced disclosure policies.  As a threshold matter, assuming such a right existed, the claim fails

16   because there are instances where disclosure is permissible and, thus, Plaintiffs cannot meet the

17   "no set of circumstances" standard for a facial challenge.  In any event, parents do not have a

18   fundamental right to notification of their child's gender identity, or gender expression, or sexual

19   orientation; and even if they did, the Act withstands constitutional scrutiny.

20                  **1.      Parent Plaintiffs' facial challenge fails because they cannot show the
                             Act would be invalid in every circumstance**
21

22          Parent Plaintiffs bring only a facial challenge to the Act based on alleged parental

23   substantive due process rights.  But the Act permits many scenarios through which information

24   about their child's gender identity and/or gender expression will be disclosed to parents, including

25   at least the following.  First, a school district can adopt a policy requiring notification to parents,

26   with the student's consent, and school staff makes such a disclosure with student consent.

27   Second, a district can adopt a policy that permits disclosure without student consent if state law

28   pertaining to student safety requires parental notification, and information is conveyed to parents

through that provision.  Third, parents have existing rights to visit schools and classrooms, and so they can be involved in school and their child's lives in ways that would give them the ability to learn more about their child.  Fourth, students and parents remain free to initiate conversations about gender identity, gender expression, and sexual orientation with each other in the time and manner of their own choosing, and the Act actually promotes such family discussions through supports.  *See* Cal. Educ. Code, §217.  Thus, even assuming a due process right exists to disclosure of information their child is presenting with a different gender expression, or using a name or pronoun that is different from the sex identified at birth, or is gay (which there is not), the Act does not implicate such a right—and thus no there would be no violation—in these circumstances.  Because Parent Plaintiffs cannot meet their burden of showing that "no set of circumstances exists under which the Act would be valid," as required to succeed on a facial challenge, this claim should be dismissed in its entirety.  *See Salerno*, 481 U.S. at 745.

## 2.   Substantive due process does not require schools to notify parents of a student's gender identity, gender expression, or sexual orientation

Parent Plaintiffs' substantive due process also fails because it is based on a legal theory related to the right to control their child's upbringing that is unsupported by any Ninth Circuit or Supreme Court case law.  The Ninth Circuit has made clear that parents have a due process right to choose their child's educational forum, but they do not have a constitutional right to direct their chosen school's policies, administration, or curriculum.  As such, courts have repeatedly dismissed due process challenges to school policies across a range of contexts that parents argued implicated important aspects of their child's upbringing.  Parent Plaintiffs' claims should be dismissed for the same reason.  In addition, the parental right regarding a child's medical care is not implicated here because the Act does not involve medical or psychological treatment.

### a.   Parents' substantive due process rights do not include forced disclosure of students' gender identity and expression to them

There is no substantive due process right to compel schools to adopt a policy that requires school staff to discriminate against transgender and gender nonconforming students or place them in harm's way.  The Due Process Clause of the Fourteenth Amendment generally "protects an

15

1    individual's fundamental rights to liberty and bodily autonomy."  *C.R. v. Eugene School Dist. 4J*,

2    853 F.3d 1142, 1154 (9th Cir. 2016).  The U.S. Supreme Court has repeatedly made clear that

3    parental due process rights have "limited scope" in the educational context.  *Norwood v.*

4    *Harrison,* 413 U.S. 455, 461 (1973); *Runyon v. McCrary*, 427 U.S. 160, 177 (1976).  In *Runyon*,

5    the Court rejected the claim that parental rights permitted schools to discriminate against students,

6    stating that parental rights to direct the upbringing of their children—in the school context—are

7    limited to the facts of *Pierce v. Society of Sisters* (1925) 268 U.S. 510, 534-535 (right to send

8    child to private school) and *Meyer v. Nebraska* (1923) 262 U.S. 390, 397, 403 (right to provide

9    instruction in languages other than English at private school).  *Runyon*, 427 U.S. at 177.  It has

10   stressed that those precedents do not afford parents a constitutional right to a "private school

11   education unfettered by reasonable government regulation."  *Id*. at 163, 177-178.  Thus, the rights

12   recognized in *Pierce* and *Meyer* do not support creating a parental right to force school staff to

13   notify parents of a child's sexual orientation, gender identity or expression, absent consent.[9]

14        Following from that precedent, the Ninth Circuit has repeatedly held that a parent is not

15   constitutionally entitled to control the administration, policies, curriculum, or operations of their

16   child's school.  *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020); *McNeil v.*

17   *Sherwood Sch. Dist. 88J*, 918 F.3d 700, 711 (9th Cir. 2019); *Fields v. Palmdale Sch. Dist*., 427

18   F.3d 1197, 1204-1207 (9th Cir. 2005), *amended on denial of reh'g en banc*, 447 F.3d 1187 (9th

19   Cir. 2006).  A parent may choose their child's educational forum without state interference, but

20   once that decision is made, the parent's fundamental right to control that education is

21   "substantially diminished."  *Fields*, 427 F.3d at 1206.  A parent has no substantive due process

22   right to dictate how a school operates its learning environment, even where a school's chosen

23   policy conflicts with the parent's beliefs about how best to raise their child.  *See Parents for*

24   *Privacy*, 949 F.3d at 1231 (parents are entitled to inform their child about sex and gender identity,

25   but have no constitutional right to override school's creation of educational environment that

26   ───────────
          [9] Further, there is no infringement of a parental right where, as here, the Act does not require or
27   prohibit any action by parents, in contrast to the laws at issue in *Meyer* and *Pierce*.  *See, e.g., Anspach ex*
     *rel. Aspach v. City of Phila. Dep't of Pub. Health*, 503 F.3d 256, 263-64 (3rd Cir. 2007) (no parental right
28   at stake where public health clinics gave contraception to minors without parental consent, because clinics
     did not compel the minors in any way (including not forbidding them from talking with their parents).

                                                     16

1    permits students to use facilities associated with their gender identity.)  Allowing this kind of

2    claim would amount to imposing an obligation on schools to "accommodate the personal, moral

3    or religious concerns of every parent," which "would not only contravene the educational mission

4    of the public schools, but also would be impossible to satisfy."  *See Fields*, 427 F.3d at 1206.[10]

5          Moreover, in a number of recent challenges to school districts' policies or practices

6    regarding social transition of students, district courts have held that parents did not have a

7    substantive due process right to be notified of their student's transgender or gender

8    nonconforming identity by the school district. *See, e.g., Regino v. Staley,* No. 2:23-cv-00032,

9    2023 WL 4464845, at *3-4 (E.D. Cal. July 11, 2023), *appeal docketed,* No. 23-1601 (9th Cir. July

10   21, 2023); *Foote v. Town of Ludlow*, No. CV 22-30041-MGM, 2022 WL 18356421, at *5, 9 (D.

11   Mass. Dec. 14, 2022), *appeal docketed*, No. 23-1069 (1st Cir. January 17, 2023); *John & Jane

12   Parents 1 v. Montgomery Cnty. Bd. of Ed.*, 622 F.Supp.3d 118, 130 (D. Md. 2022), *vacated and

13   remanded based on lack of standing*, 78 F.4th 622 (4th Cir. 2023), *cert. denied sub nom. Jane

14   Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 144 S. Ct. 2560 (2024); *Blair v. Appomattox Cnty.

15   Sch.l Bd.*, No. 6:23-CV-47, 2024 WL 3165312 at *6 (W.D. Va. June 25, 2024), *appeal docketed*,

16   No. 24-1682 (4th Cir. July 24, 2024); *Doe v. Delaware Valley Reg'l High Sch. Bd. of Educ.*, No.

17   CV-00107, 2024 WL 706797 at *11 (D.N.J. Feb. 21, 2024).

18          **b.    The Act does not implicate parental rights related to medical
                    care for children**

19          Parent Plaintiffs also appear to rely upon parental rights related to medical care and

20   treatment of their children to support their argument for forced disclosure policies when students

21   socially transition at school.  FAC ¶¶ 70-71 (citing *Parham v. J.R.*, 442 U.S. 584, 604 (1979)

22   (parental rights in context of child's institutionalization in a state mental hospital)).  Such parental

23   rights are irrelevant here because Plaintiffs' own pleadings establish that the Act does not address

24   or impact medical treatment.

25

26          [10] Plaintiffs contend that their constitutional right "to make decisions concerning the care, custody, and control of their children" extends to forced outing by their district.  FAC ¶ 67 (citing *Troxel v. Granville*, 530 U.S. 57 (2000)).  But as the Ninth Circuit has recognized, "*Troxel* concerned a state

27   government's interference with a mother's decision about the amount of visitation" rights, and "did not address the extent of parents' rights to direct the policies of the public schools that their children attend."

28   *Parents for Privacy*, 949 F.3d at 1230.

17

1         Specifically, Parent Plaintiffs allege that "gender transition is life-altering and implicates

2    related medical issues that require the parents' care and attention."  FAC ¶ 71.  But honoring a

3    student's request to socially transition does not constitute medical or psychological treatment by a

4    district.  *See, e.g*., *Foote*, 2022 WL 18356421 at *5 ("Plaintiffs have failed to adequately allege

5    that Defendants provided medical or mental health treatment . . . simply by honoring their

6    requests to use preferred names and pronouns at school"); *Regino*, 2023 WL 4464845 at *3

7    (rejecting as conclusory the allegation that permitting social transitioning at school constitutes

8    medical treatment).  *See also Tingley v. Ferguson* 47 F.4th 1055, 1090 (9th Cir. 2022) (courts can

9    discern, as a matter of law, whether certain practices amount to medical or psychological

10   practices).  Indeed, Plaintiffs' own pleadings concede that "social transition" primarily refers to

11   "adopting a new name and/or pronouns that differ from one's natal sex," and that "'[s]ocial

12   transition' is distinct from medial transition, which refers to various medical interventions to

13   bring one's physical appearance into closer alignment with one's asserted gender identity, such as

14   puberty blockers, cross-sex hormone therapy, and various surgical intervention."  FAC ¶¶ 26, 33.

15   While Parent Plaintiffs also allege that "[t]he primary therapeutic purpose of social transitioning

16   is to relieve the psychological distress associated with having a mismatch between one's natal sex

17   and gender identity," *id.* ¶ 33, social transitioning is not limited to individuals who suffer from

18   gender dysphoria. *See, e.g*., *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594-95 (4th Cir.

19   2020), *as amended* (Aug. 28, 2020) (while gender dysphoria is a recognized mental health

20   disorder suffered by some gender nonconforming individuals, being transgender is "not a

21   psychiatric condition, and implies no impairment in judgment, stability, reliability, or general

22   social or vocational capabilities"); *Cf. SmithKline Beecham Corp. v. Abbott Laboratories*, 740

23   F.3d 471, 484-485 (9th Cir. 2014) (noting historical discrimination against gay people included

24   inadmissibility under immigration laws as individuals "afflicted with psychopathic personality").

25   Because the Act does not implicate medical or psychological interventions, Parent Plaintiffs'

26   reliance on parental rights related to their children's medical care is misplaced.

27

28

### 3. The Act survives review, whether rational basis or strict scrutiny applies

Because there is no fundamental parental right to forced disclosure of their child's gender identity, expression, and sexual orientation, there need only be a "reasonable relation to a legitimate state interest" to justify the Act. *Fields*, 427 F.3d at 1208 (applying rational basis review to parental substantive due process claim).

This rational basis review is easily satisfied here. The Act is rationally related to the State's compelling (not just legitimate) interest in protecting the health and safety of LGBTQ youth. Specifically, the State has a compelling interest in protecting transgender and gender nonconforming students from discrimination, harassment, bullying, and suicide risk—including from district policies that "forcibly out" students by disclosing their LGBTQ identities to their families without their consent and before they are ready—and promoting safe and supportive school environments with better educational outcomes for such students. *See supra*, § I; RJN Ex. 1 at § 2 (setting forth Legislative findings for the Act). The State also has a compelling interest in advancing student privacy and well-being, and precluding school forced-outing policies through the Act rationally advances that interest, given legislative findings that such policies undermine students' ability to build trust with their parents and violate students' rights to privacy and self-determination. *See id.* at § 2(e)-(g). Courts have held such interests are clearly legitimate. *See, e.g.*, *Parents for Priv.*, 949 F.3d at 1238 (plaintiffs "fail to negate what the record makes clear: the Student Safety Plan is rationally related to the legitimate purpose of protecting student safety and well-being, and eliminating discrimination on the basis of sex and transgender status"); *Fields*, 427 F.3d at 1209 (protecting student mental health, facilitating students' ability to learn, and providing nurture and care to students are legitimate state interests); *Regino*, 2023 WL 4464845 at *4 (recognizing "legitimate state interest in creating a zone of protection for transgender students and those questioning their gender identity from adverse hostile reactions," which was "in line with" policy's "general purpose to combat discrimination and harassment against students"); *see also Williams v. Kincaid*, 45 F.4th 759, 772 (4th Cir. 2022) (recognizing "long history of discrimination against transgender people"), *cert. denied*, 143 S. Ct. 2414 (2023).

19

Even if strict scrutiny applies here (and it does not), the Act meets that standard as well. *Reno v. Flores,* 507 U.S. 292, 301-302 (1993) (government infringement on "fundamental" right must be narrowly tailored to serve a compelling state interest). The State's interest in protecting LGBTQ students from bullying and harassment, and in fostering a safe and supportive school environment where students are not outed before they are ready, is compelling. *See, e.g., New York v. Ferber*, 58 U.S. 747, 756 (1982) (state interest in "safeguarding the physical and psychological well-being of a minor" is compelling); *Doe by & through Doe v. Boyertown Area Sch. Dist*., 897 F.3d 518, 528 (3rd Cir. 1980) (policy served compelling state interest in not discriminating against transgender students).

The Act is also narrowly tailored in furtherance of that compelling interest because, as previously discussed, it only precludes districts from adopting and enforcing forced disclosure policies, while permitting mandatory disclosure when a student consents or in circumstances where it would otherwise be required by state or federal law. Cal. Educ. Code, §§ 220.3, 220.5. In addition, it allows for districts to adopt policies that lay out other permissible circumstances for parental disclosure. *See supra* at 4-5, 14-15. Moreover, the Act supports parents and families of LGBTQ students by offering resources for them and their districts (Cal. Educ. Code, §217), which may facilitate open communications between LGBTQ students and their parents, with district support. Thus, the Parent Plaintiffs' substantive due process claim should be dismissed.

### C.   Parent Plaintiffs' Free Exercise Claim Fails Because the Act is Neutral and Generally Applicable, and Meets Rational Basis

Parent Plaintiffs' First Amendment claim is equally baseless. Under the Free Exercise Clause, governmental restrictions that incidentally burden religious activity are not discriminatory—and as such are subject to rational basis review—if they are neutral and of general applicability. *Emp't Div. v. Smith*, 494 U.S. 872, 878-82 (1990); *see also Fulton v. City of Phila.*, *Pa.*, 593 U.S. 522, 533 (2021) (declining to overturn *Smith*). Only if a law is not neutral or generally applicable does strict scrutiny apply. *Fulton*, 141 S. Ct. at 1876. A law is not "neutral" if it targets religious belief or has a purpose of suppressing religious practices. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* (*Lukumi*), 508 U.S. 520, 533-34 (1993). And it is not generally applicable if it "treat[s] any comparable secular activity more favorably than

20

religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) ("A law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect").  A law is also not generally applicable if it creates a mechanism for individual, discretionary exemptions.  *Fulton*, 593 U.S. at 534-535.

Plaintiffs have made no effort to allege that the Act is not neutral or generally applicable, such that strict scrutiny applies under *Smith*.  Nor can they.  The Act is facially neutral in that it treats religious and non-religious conduct equally, and there is no allegation that Legislature was motivated by hostility to religion in adopting it.  Similarly, Plaintiffs have not alleged that any comparable secular exemption exists or that the Act creates a discretionary exemption.

Instead, Plaintiffs allege simply that strict scrutiny applies because they have a "right to control 'the religious upbringing and education of their minor children, which is protected by strict scrutiny under the Free Exercise Clause.'"  FAC ¶ 74.  For this, Plaintiffs cite to *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  But *Yoder* relied on the standard articulated in *Sherbert v. Verner*, 374 U.S. 398 (1963) that was expressly overturned by *Smith* and replaced by the neutral and generally applicable test above.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014) (*Smith* "largely repudiated the method of analyzing free-exercise claims that had been used in cases like *Sherbert v. Verner*. . . and *Wisconsin v. Yoder*").[11]  In dicta, *Smith* attempted to distinguish *Yoder* and other prior cases by noting that they invoked a Free Exercise Clause claim "in conjunction with other constitutional protections," including "the right of parents . . . to direct the education of their children" in *Yoder*.  *Smith*, 494 U.S. at 881.  That "hybrid situation" did not exist in *Smith*.  *Id.* at 882.  Since then, other litigants have argued that *Smith* recognized a "hybrid rights doctrine" under which strict scrutiny automatically applies.  However, that theory "has been effectively repudiated" in the Ninth Circuit.  *Dousa v. United States Dep't of Homeland Sec.*, No. 19CV1255-LAB (KSC), 2020 WL 434314, at *11 (S.D. Cal. Jan. 28, 2020) (citing *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) (noting that the hybrid

---

[11] Plaintiffs also cite to *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020), but that case did not involve any claims relating to the religious upbringing of children and relied on the *Smith* test. *See id.* at 18 (applying strict scrutiny to law the court found was not "neutral" or of "general applicability").

1  rights doctrine has been "widely criticized" and declining to "be the first court . . . [to] allow[ ] a

2  plaintiff to bootstrap a free exercise clause in this manner"); *Ass'n of Christian Sch. Int'l v.*

3  *Stearns*, 362 F. App'x 640, 646 (9th Cir. 2010) (re-affirming *Jacobs*); *Lukumi*, 508 U.S. at 566–

4  67 (Souter, J., dissenting) (explaining why the hybrid rights doctrine is "ultimately untenable")).

5  In fact, neither the Supreme Court nor the Ninth Circuit has ever applied *Smith*'s hybrid analysis

6  in a free exercise case.  *See Parents for Privacy*, 949 F. 3d at 1236-1238 ("The extent to which

7  the hybrid rights exception truly exists, and what standard applies to it, is unclear").

8         Even if this doctrine did exist, though, it would not apply here since "alleging multiple

9  failing constitutional claims that do not have a likelihood of success on the merits cannot be

10  enough to invoke a hybrid rights exception and require strict scrutiny."  *Id.* at 1237.  As noted

11  above, the Parents Plaintiffs' substantive due process claims have no merit.

12         Moreover, Plaintiffs have not alleged sufficient facts even to meet the *Sherbert/Yoder*

13  standard, which requires a threshold showing that a challenged law "substantially burdens"

14  religion.[12]  *See Burwell*, 573 U.S. at 693.  In *Yoder*, the Supreme Court determined that the Amish

15  mode of life was "essential" to plaintiffs' religious beliefs, and their religious community would

16  be gravely endangered by state law making secondary school education compulsory until age 16.

17  *Yoder*, 406 U.S. at 218–19.  No analogous burden exists here.  Plaintiffs allege only that their

18  "religious beliefs require that they be notified if their child requests to socially transition at school

19  so that they may be involved with their child's treatment at school."  FAC at ¶ 75.  Even if

20  sufficiently plead as a "religious belief," this is not enough for a facial attack on a statute since

21  there is no allegation that the parents of every LGBTQ student in California share a purported

22  religious belief in parental notification that is violated by the Act.  *See Salerno*, 481 U.S. at 745.

23  It's not even enough for an as-applied challenge, since there is no allegation that Plaintiffs' own

24  purported beliefs have actually been burdened or rights violated.  *See supra* at 8-9.

25         In fact, while Plaintiffs purport to have a "religious" belief in notification itself, their real

26  objection is to schools acceding to student requests to respect the students' names and pronouns.

27  *See* FAC ¶ 77.  But those are actions not regulated by the Act.  Even if they were, Plaintiffs have

28
_____

[12] They fail to allege even an "incidental" burden under *Smith*.  *Fulton*, 593 U.S. at 533.

1    not alleged how those actions interfere with their own ability to provide religious instruction at

2    home.  *See e.g.*, *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d

3    1218, 1226 (N.D. Cal. 2017), *aff'd sub nom. Cal. Parents for the Equalization of Educ. Materials*

4    *v. Torlakson*, 973 F.3d 1010 (9th Cir. 2020).  And they have no recognized right to impose their

5    own beliefs on others.  *See Parents for Privacy*, 949 F.3d at 1231.

6          Because the Act is neutral and generally applicable, rational basis applies to this claim; and

7    the Act easily passes constitutional muster because it is undoubtedly reasonably related to the

8    State's interest in protecting the privacy, health, and well-being LGBTQ students.  But even if

9    strict scrutiny applied, the Act would survive for the reasons above, *supra* at 19-20.

10         **D.     The Act Does Not Violate FERPA**

11         Plaintiffs' FERPA claim fails on the merits because the Act does not conflict with FERPA.

12   Plaintiffs allege that "[t]o the extent a child requests to socially transition at school by changing

13   their name or pronouns, and to the extent that information must be reflected in school records in

14   accordance with FERPA, AB 1955 therefore compels District Plaintiffs to violate FERPA and

15   deprives the Parent Plaintiffs of their rights under FERPA."  FAC ¶ 85.  But Plaintiffs

16   misconstrue the requirements of FERPA and the Act.

17         Under FERPA, parents must be afforded "the right to inspect and review" their child's

18   education records.  20 U.S.C. § 1232g(a)(1)(A).[13]  Districts must "establish appropriate

19   procedures for the *granting of a request by parents for access* to the education records of their

20   children."  *Id*. (emphasis added).  FERPA also gives parents the right "to challenge the content of

21   [their] student's education records, in order to insure that the records are not inaccurate,

22   misleading, or otherwise in violation of the privacy rights of students, and to provide an

23   opportunity for the correction or deletion of any such inaccurate, misleading or otherwise

24   inappropriate data contained therein and to insert into such records a written explanation of the

25   _____

26        [13] FERPA defines "education records" as "records, files, documents, and other materials"
     containing information directly related to a student that "are maintained by an educational agency or
27   institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). This
     definition contains an exception for "records of instructional, supervisory, and administrative personnel . .
28   . which are in the sole possession of the maker thereof and which are not accessible or revealed to any
     other person except a substitute." *Id*., § 1232g(a)(4)(B)(i).

                                          23

1  parents respecting the content of such records." *Id.*, § 1232g(a)(2).  Thus, it requires parents be

2  given access to their children's education records upon request.  Nowhere does it require a parent

3  be *affirmatively notified* when a record related to their child reflects a different name or pronoun.

4      This right of access to education records *upon request* is not implicated by the Act, which

5  simply prohibits school districts from *mandating* disclosure of information about a student's

6  sexual orientation, gender identity, and gender expression without consent.  That is, the Act does

7  not prohibit district personnel from providing education records to parents who request them

8  under FERPA, even if they contain information about a students' gender identity or expression.

9  Moreover, even if the Act could somehow be construed to prohibit a district from providing

10  parents access to their students' records when requested, the Act's prohibitions are expressly

11  limited by the phrase "unless otherwise required by state and federal law," which requires school

12  districts to comply with FERPA.   For this reason, the FERPA claim should be dismissed.

13  **E.  The LEA Plaintiffs' Claim for Declaratory Relief Based on Federal Constitutional Preemption Fails Because it is Derivative of Parent Plaintiffs' Claims for Violation of the First and Fourteenth Amendments**

14

15      The LEA Plaintiffs allege that the Act is "preempted by federal constitutional law and

16  impermissibly interferes with parental rights," and, on that basis, request a declaration that the

17  Act violates the U.S. Constitution.  FAC ¶¶ 90, 92.  In particular, they argue that the First and

18  Fourteenth Amendments preclude public school personnel "from withholding information from

19  parents regarding changes to their child's gender identity or expression."  FAC ¶ 91.  But this

20  claim is derivative of Parent Plaintiffs' claims that the Act violates the Substantive Due Process

21  Clause of the Fourteenth Amendment and the First Amendment.  It, therefore, fails for same

22  reasons and must be dismissed.  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D.

23  Cal. 2022) (dismissing declaratory relief claim after all underlying claims were dismissed).

24  **F.  CVUSD and AUHSD's Claim for Declaratory Relief Regarding Their Records-Change Policies Fails Because the Policies Flatly Violate the Act**

25

26      Finally, CVUSD and AUHSD's claim for declaratory relief regarding the validity of their

27  own policies fails because the policies, on their face and as alleged, flatly violate the Act.

28      Under the policies—which are identical in their relevant portions—mandatory parental

24

1  notification is triggered whenever an employee is "made aware of" any "[r]equests to change any

2  information contained in the student's official or unofficial records."  RJN Ex. 3 at 3; Ex. 4 at 2.[14]

3  The policies require an employee to immediately notify the school's principal or designee, who in

4  turn is required to meet with the student and to notify the student's parents or guardians of the

5  request within three days of when the reporting employee learned of the request.  *Id.*  Critically,

6  the Complaint states that these policies mandate parental notification any time a student requests

7  to socially transition at school.  *See* FAC ¶ 60.  Specifically, Plaintiffs allege: "To the extent that

8  a child requests that their school facilitate socially transitioning the student by, for example,

9  changing their preferred name or pronouns that are reflected on official or unofficial records,

10  Board Policies 5010 (CVUSD) and 5010.11 (AUHSD) require that parents be notified of that

11  change to their child's records."[15]  *Id.*  In other words, simply because a student's name or

12  pronouns "are reflected" or "contained" on student records, a student's request to use different

13  names or pronouns will automatically trigger parental notification under the policies.  This

14  violates the Act on its face because it requires employees to disclose the student's gender identity

15  to their parents or guardians, regardless of whether the student has consented to such notification.

16  *See* RJN Ex. 1 at § 220.5(a); *cf.* FAC ¶ 33 (acknowledging that changes to a student's pronouns

17  or name as part of a social transition reflects their gender identity).  Because the policies violate

18  the Act on their face, CVUSD and AUHSD's claim for declaratory relief fails.

19  ### CONCLUSION

20       For the reasons above, Plaintiffs' claims should be dismissed in their entirety without leave

21  to amend.

22

---

23  [14] The policies do not define "official" and "unofficial" records.  *See id.; cf.* Cal. Educ. Code §
24  49061(b) (defining "pupil records").  Because "unofficial" is vague and broad on its face, the policies
    could require parental disclosure based on a sweeping range of routine classroom papers that could be
    considered "unofficial" student records—from homework assignments to hall passes.

25  [15] Any argument by CVUSD and AUHSD that these policies are meant to safeguard the rights of
    parents to control their children's school records is pretext.  To be clear, state law does not allow a student
26  to change their "official" records without parental involvement.  By law, changes to pupil records can be
    made only by parents or by former students based on a legal name change. *See* Cal. Ed. Code §§ 49062.5
27  (former students); 49070 (process of parent to change records), 49069.7 (records can only be changed by
    statutory processes).  And no State law (or federal law) requiring a parent or guardian to be notified if a
28  student makes a misguided request to change their pupil records without the necessary parental approval.

25

Dated:  October 7, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General

EMMANUELLE S. SOICHET
Deputy Attorney General
*Defendants Governor Newsom, Attorney*
*General Bonta, and State Superintendent*
*for Public Instruction Thurmond*

SA2024303201
44350240.docx

26