ROB BONTA, State Bar No. 202668
Attorney General of California
DARRELL W. SPENCE (SBN 248011)
Supervising Deputy Attorney General
JENNIFER A. BUNSHOFT (SBN 197306)
EMMANUELLE S. SOICHET (SBN 290754)
KEVIN L. QUADE (SBN 285197)
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 510-3377
  Fax:  (415) 703-5843
  E-mail: Jennifer.Bunshoft@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHINO VALLEY UNIFIED SCHOOL DISTRICT, a local educational agency; ANDERSON UNION HIGH SCHOOL DISTRICT, a local educational agency; ORANGE COUNTY BOARD OF EDUCATION, a local educational agency; OSCAR AVILA, an individual; MONICA BOTTS, an individual; JASON CRAIG, an individual; KRISTI HAYS, an individual; COLE MANN, an individual; VICTOR ROMERO, an individual; GHEORGHE ROSCA, JR., an individual; and LESLIE SAWYER, an individual,** | 2:24-cv-01941-DJC-JDP |
| | **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
| Plaintiffs, | Date:          December 19, 2024 |
| | Time:          1:30 p.m. |
| v. | Dept:          10 |
| | Judge:         The Hon. Daniel J. Calabretta |
| **GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROBERT BONTA, in his official capacity as Attorney General of the State of California; and TONY THURMOND, in his official capacity as California State Superintendent of Public Instruction,** | Trial Date:    Not Assigned |
| | Action Filed:  7/16/2024 |
| Defendants. | |

# TABLE OF CONTENTS

Page

Introduction .................................................................................................................... 1

Argument ........................................................................................................................ 1

I.    Plaintiffs Have Failed to Meet Their Burden of Establishing That the Court Has Subject Matter Jurisdiction over Any of Their Claims .................................. 1

    A.    Parent Plaintiffs Lack Standing................................................................ 1

        1.    Parent Plaintiffs Fail to Show Imminent Risk of Harm ................. 1

        2.    Parent Plaintiffs' claims lack causation and are not redressable ...................................................................................... 4

    B.    The LEA Plaintiffs Lack Standing to Bring Their Claims......................... 4

    C.    The Court Lacks Jurisdiction to Hear CVUSD and AUHSD's Claim for Declaratory Relief .................................................................. 6

    D.    The Governor Is Entitled to Eleventh Amendment Immunity .................. 7

II.    Plaintiffs' Claims Should Be Dismissed Because They Are Not Cognizable As a Matter Of Law .................................................................................... 8

    A.    Parent Plaintiffs Have Failed to State a Valid Due Process Claim ........... 8

        1.    Parent Plaintiffs cannot meet the requirements for a facial challenge ...................................................................................... 8

        2.    Parents lack a substantive due process right to notification of students' gender identity, gender expression, or sexual orientation .................................................................................... 9

            a.    General parental rights of control over their children do not include forced disclosure by schools ..................... 9

            b.    Plaintiffs have failed to show that the Act implicates any parental rights related to medical care for children........................................................................... 10

        3.    Plaintiffs have failed to show that the Act does not survive review, whether rational basis or strict scrutiny applies ............... 11

    B.    Parent Plaintiffs Have Failed to State a Valid Free Exercise Claim......... 12

    C.    Plaintiffs Fail to Show that the Act is Preempted by FERPA.................. 14

    D.    The LEA Plaintiffs' Declaratory Relief Claim Fails.............................. 15

    E.    CVUSD and AUHSD's Alternative Declaratory Relief Claim Fails ....... 15

Conclusion .................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page**

CASES

*Am. Legion v. Am. Humanist Ass'n*
588 U.S. 29 (2019) ........................................................................... 3

*Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*
503 F.3d 256 (3rd Cir. 2007) ........................................................... 9

*Artichoke Joe's v. Norton*
216 F. Supp. 2d 1084 (E.D. Cal. 2002) ........................................... 8

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*
136 F.3d 1360 (9th Cir. 1998) ....................................................... 5, 6

*California v. U.S. Department of Homeland Security*
476 F.Supp.3d 994 (N.D. Cal. 2020) .............................................. 6

*Church of Lukumi Babalu Aye v. City of Hialeah*
508 U.S. 520 (1993) .................................................................. 12, 13

*City of Huntington Beach v. Newsom*
2024 WL 4625289 (9th Cir. Oct. 30, 2024) .................................... 5

*City of South Lake Tahoe v. Cal. Tahoe Regional Planning Agency*
625 F.3d 231 (9th Cir. 1980) .................................................... 5, 6, 7

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) ..................................................................... 1, 4

*Doe v. Horne*
115 F.4th 1083 (9th Cir. 2024) ...................................................... 13

*Doe v. Pine-Richland Sch. Dist.*
2024 WL 2058437 (W.D. Pa. May 7, 2024) .................................. 2, 3

*Doe v. San Diego Unified Sch. Dist.*
19 F.4th 1173 (2021) ..................................................................... 13

*Duke Energy Trading and Marketing L.L.C. v. Davis*
267 F.3d 1042 (9th Cir. 2001) ......................................................... 8

*Ex Parte Young*
209 U.S. 123 (1908) ..................................................................... 7, 8

*Foote v. Town of Ludlow*
2022 WL 18356421 (D. Mass. Dec. 14, 2022) ............................... 11

## TABLE OF AUTHORITIES
### (continued)

Page

*Foothills Christian Church v. Johnson*
2023 WL 4042580 (S.D. Cal. June 15, 2023) ...................................................... 3, 4

*Fulton v. City of Phila.*
141 S. Ct. 1868 (2021) ................................................................................... 13, 14

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................ 15

*Harris v. McRae*
448 U.S. 297 (1980) ................................................................................................ 3

*Jane Parents 1 v. Montgomery County Bd. of Educ.*
78 F.4th 622 (4th Cir. 2023) ................................................................................... 2

*Johnson v. Astrue*
597 F.3d 409 (1st Cir. 2009) ................................................................................. 11

*Kanuszewski v. Michigan Dep't of Health and Hum. Serv.*
927 F.3d 396 (6th Cir. 2019) ................................................................................. 11

*Los Angeles Cnty. Bar Ass'n v. Eu*
979 F.2d 697 (9th Cir. 1992) ................................................................................... 7

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ..................................................................................... 1, 3, 5, 6

*Mann v. Cnty. of San Diego*
907 F.3d 115 (9th Cir. 2018) ................................................................................. 11

*Mirabelli v. Olson*
691 F. Supp. 3d 1197 (S.D. Cal. 2023) ................................................................. 11

*Mueller v. Auker*
700 F.3d 1180 (9th Cir. 2012) ............................................................................... 11

*Nat'l Audubon Soc'y, Inc. v. Davis*
307 F.3d 835 (9th Cir. 2002) ................................................................................... 7

*Norwood v. Harrison*
413 U.S. 455 (1973) ................................................................................................ 9

*Doe, next friend of Doe v. Horne*
2024 WL 4119371 (9th Cir. Sept. 9, 2024) ............................................................ 3

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Okanogan School Dist. #105 v. Super. of Pub. Inst.*
4
   291 F.3d 1161 (9th Cir. 2002) ............................................................................. 6, 7

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*
5
   551 U.S. 701 (2007) ............................................................................................. 2

6
*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*
7
   95 F.4th 501 (7th Cir. 2024) ............................................................................... 2

8
*Parham v. J.R.*
   442 U.S. 584 (1979) ............................................................................................. 11
9

*Pickup v. Brown*
10
   740 F.3d 1208 (9th Cir. 2014) ............................................................................. 13

11
*Ramirez v. Ghilotti Bros. Inc.*
12
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) .............................................................. 12

13
*Regino v. Staley*
   2023 WL 4464845 (E.D. Cal. July 11, 2023) ...................................................... 11
14

*Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*
15
   2022 WL 1471372 (D. Kan., May 9, 2022) ........................................................ 10

16
*Runyun v. McCrary*
17
   427 U.S. 160 (1976) ............................................................................................. 9

18
*Shanks v. Blue Cross & Blue Shield of Wis.*
   979 F.2d 1232 (7th Cir. 1992) ............................................................................. 10
19

*Short v. New Jersey Dep't of Educ.*
20
   2024 WL 3424729 (D.N.J. July 16, 2024) .......................................................... 2, 3

21
*Stormans, Inc. v. Wiesman*
22
   794 F.3d 1064 (9th Cir. 2015) ............................................................................. 14

23
*Sweat v. Hull*
   200 F. Supp. 2nd 1162, 1174-75 (D. Arizona 2001) .......................................... 8
24

*Tandon v. Newsom*
25
   593 U.S. 61 (2021) .............................................................................................. 12, 13, 14

26
*Tenn. v. Cardona*
27
   2024 WL 3019146 (E.D., Ky. June 17, 2024) .................................................... 10

28

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Tingley v. Ferguson*
    47 F.4th 1055 (9th Cir. 2022) ........................................................................ 13, 14

4

5

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ........................................................................................... 3

6

*United States v. Rahimi*
    144 S. Ct. 1889 (2024) ...................................................................................... 8

7

*United States v Salerno*
    481 U.S. 739 (1987) ........................................................................................... 8

8

9

*Washington State Grange v. Washington State Republican Party*
    552 U.S. 442 (2008) ........................................................................................... 8

10

11

**STATUTES**

12

20 U.S.C.
    § 1232g(a)(1)(A) ............................................................................................... 14
    § 1232g(a)(2) ..................................................................................................... 14
    § 1232g(a)(4) ..................................................................................................... 14

13

14

California Education Code
    § 220.1 ............................................................................................................... 15
    § 220.3 ............................................................................................................... 15
    § 220.3(a) ........................................................................................................... 15
    § 220.5 ............................................................................................................... 15
    § 220.5(a) ........................................................................................................... 15

15

16

17

18

**CONSTITUTIONAL PROVISIONS**

19

First Amendment ...................................................................................................... 6, 15

20

Eleventh Amendment ............................................................................................... 1, 7, 8

21

Fourteenth Amendment ............................................................................................... 5, 6,

22

Free Exercise Clause .................................................................................................. 3, 10

23

Supremacy Clause ....................................................................................................... 5, 7

24

**OTHER AUTHORITIES**

25

Assembly Bill 1955 .................................................................................................. passim

26

27

28

Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss (2:24-cv-01941-DJC-JDP)

**INTRODUCTION**

Plaintiffs' Opposition brief in response to Defendants' Motion to Dismiss is unavailing for a number of reasons.  First, the Opposition flatly fails to address a number of Defendants' arguments.  Second, the Opposition mischaracterizes the holdings of certain cases cited therein, and mischaracterizes key statutory authority (e.g., FERPA).  Third, the Opposition attempts to cover up defective allegations in their First Amended Complaint (FAC) with conclusory legal argument.  And finally, even where Plaintiffs attempted to rebut the arguments contained in the Motion, those arguments are unavailing.  Plaintiffs have also failed to establish standing to bring their claims, and the Governor is entitled to Eleventh Amendment immunity.  Plaintiffs' challenge to Assembly Bill 1955 (the Act) based on alleged constitutional violations and federal preemption, fails on the merits as well because their claims are not cognizable.  Thus, the Motion should be granted, and the FAC should be dismissed in its entirety, without leave to amend.

**ARGUMENT**

I.   **PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING THAT THE COURT HAS SUBJECT MATTER JURISDICTION OVER ANY OF THEIR CLAIMS**

A.   **Parent Plaintiffs Lack Standing**

1.   **Parent Plaintiffs Fail to Show Imminent Risk of Harm**

As raised in Defendants' Motion, Parent Plaintiffs lack standing because they have failed to show any injury in fact supporting their claims. Mot. at 17-18.  This injury to their legal interests must be "concrete and particularized" to them and "actual or imminent."  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs acknowledge that because the Act has not yet taken effect, they must show the threatened injury to their interests is "certainly impending" or there is a "substantial risk that harm will occur."  Opp. at 12; *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, n. 5 (2013) ("allegations of *possible* future injury are not sufficient").

Although they acknowledge this burden, they fail to point to a single allegation that satisfies it.  Most glaringly, they fail to address the specific pleading deficiencies regarding their personal circumstances raised in the Motion or engage with the dispositive cases it cited.  *See* Mot. at 17-18 (arguing that no parent has alleged that their child is LGBTQ or gender non-

1

conforming or has requested a name/pronoun change at school, or that the parent has reason to suspect their child may do so and without consenting to disclosure of that information to their parents); *Jane Parents 1 v. Montgomery County Bd. of Educ.*, 78 F.4th 622 (4th Cir. 2023), *cert. denied sub nom. Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.,* 144 S. Ct. 2560 (2024); *Doe v. Pine-Richland Sch. Dist.*, 2024 WL 2058437, *4-9, (W.D. Pa. May 7, 2024); *Short v. New Jersey Dep't of Educ.*, 2024 WL 3424729, *5-9 (D. N.J. July 16, 2024); *see also Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, *Wis.*, 95 F.4th 501, 506 (7th Cir. 2024).

Instead, Parent Plaintiffs argue that they (as parents) will be harmed by vague and unidentified "systemic effects" of the Act.  Opp. at 12-13.  For this proposition, they rely on *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) (*Parents Involved*), in which the Supreme Court held that an association of parents had sufficiently alleged standing to challenge their school district's race-based school assignment policy by alleging that their members' children, who all attended school in the district, "may" in the future be denied admission to the school of their choice under the policy.  *Id.* at 719.  Plaintiffs argue *Parents Involved* raised "an analogous set of circumstances" that allows for speculative harm.  Opp. at 12. But *Parents Involved* is inapt because the Court's analysis specifically hinged on the Equal Protection Clause claim at issue in that case.  *Id.*  In that specific context only, the association's members could establish injury based on "being forced to compete in a race-based system" that ultimately could prejudice their members' children.  *Id.* (citing *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995)); *see also J&J Parents 1*, 78 F.4th at 634 (rejecting argument that "the standing standard from *Parents Involved* applies beyond the context of equal protection claims" and noting that "we do not read *Parents Involved* as abrogating the certainly-impending-or-substantial-risk test that applies in cases involving standing for future injuries"); *Short*, 2024 WL 3424729, at *7.  Parent Plaintiffs here do not assert an equal protection claim and they fail to allege any "analogous" systemic effects to them here, even if the Act "reach[es] all students at public schools in California."  *See* Opp. at 12.  Moreover, even if *Parents Involved* did somehow apply, Parent Plaintiffs still would not have standing here because, unlike the children in *Parents Involved*, they have not shown they "face[] the very real prospect of being impacted by the

2

1  facially challenged . . . policy." *Doe, next friend of Doe v. Horne*, 2024 WL 4119371, at *2 (9th

2  Cir. Sept. 9, 2024).  Again, they have not alleged a single fact pertaining to their own children's

3  circumstances that establishes a certain or substantial risk that the Act will directly impact any

4  interaction they have will have with their children's schools.

5          This lack of specific facts regarding their own particularized injury and risk of injury is also

6  apparent in Plaintiffs' lengthy recitation of legal theories for their first two claims.  Opp. at 13-16.

7  Even if those legal theories were correct, they remain hypothetical disputes and generalized

8  grievances without concrete application to Parent Plaintiffs.  *See e.g.*, *id.* at 13 (arguing that

9  "withhold[ing] information from parents" violates parental rights generally without addressing

10 why Parent Plaintiffs specifically face certain or substantial risk of this purported injury more

11 than any other member of the population); *Lujan*, 504 U.S. at 573 (plaintiff "raising only a

12 generally available grievance about government" does not have standing); *TransUnion LLC v.

13 Ramirez*, 594 U.S. 413, 423 (2021) (standing requires plaintiff to have "personal stake" in case).

14         For instance, Plaintiffs acknowledge that a plaintiff must "'show that his good-faith

15 religious beliefs are hampered before he acquires standing to attack a statute under the Free

16 Exercise Clause." Opp. at 15; *see Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 82 (2019)

17 (Gorsuch, J., concurring) (quoting *Braunfeld v. Brown*, 366 U.S. 599, 615 (1961) (Brennan, J.,

18 concurring and dissenting)).  This means showing "the coercive effect of the enactment as it

19 operates against him in the practice of his religion."  *Harris v. McRae*, 448 U.S. 297, 321 (1980)

20 (citation omitted)); *see Foothills Christian Church v. Johnson*, 2023 WL 4042580, at *15 (S.D.

21 Cal. June 15, 2023) ("'indignation is not an injury that confers standing to sue' under the Free

22 Exercise Clause') (citing *Am. C.L. Union of Ill. V. City of St. Charles*, 794 F.2d 265, 274 (7th Cir.

23 1986)).  Parent Plaintiffs have not alleged any imminent coercive effect of the Act against them in

24 the practice of their religion because—again—they have not established any likelihood the Act

25 will impact them.  In other words, it is not enough that they allege their religious beliefs require

26 notification if their child requests to socially transition at school when there is no allegation

27 supporting a certainly impending or substantial risk to this purported religious belief based on

28 their children's specific circumstances.  *See e.g.*, *Short*, 2024 WL 3424729, at *7.

3

Finally, Plaintiffs argue (in tacit acknowledgement of their pleading deficiencies) they should not have to show their children "requested a name/pronoun change" because under the Act, parents in general would "never" know whether their children have made such a request. Opp. at 15.  Not only is this mischaracterization of the circumstances that must be alleged to establish standing (*see* Mot. at 17-18), but it is also a red herring that has been rejected by the Supreme Court.  *See Clapper*, 568 U.S. at 413-414 (dismissing plaintiffs' claims for lack of standing and failure to show injury because allegation they were being secretly surveilled by the government was conjecture); *see also id.* at 420 (the "assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing") (citation omitted).[1]

> **2.    Parent Plaintiffs' claims lack causation and are not redressable**

Plaintiffs' response regarding causation and redressability even more obviously fails to engage with the Motion, which sets forth in detail how the Act bars only one set of local school district policies and otherwise maintains districts' discretion in setting policy around student sexual orientation, gender identity, and gender expression, and thus why these choices by independent actors breaks the chain of causation here.  Mot. at 14-15, 18 n.6.  Plaintiffs ignore these legal nuances and argue—without any factual or legal support—that the Act "dictates how every district must handle gender identity" and is responsible for "any injury stemming from nondisclosure" because "there is no other policy to blame—AB 1955 invalidated them all." Opp. at 16.  This is, of course, flatly contradicted by the text of the Act itself and is baseless.  *See* Mot. at 14-15, 18.  Because Parent Plaintiffs cannot show harm caused by the Act, they lack standing.

> **B.    The LEA Plaintiffs Lack Standing to Bring Their Claims**

The LEA Plaintiffs have failed to rebut Defendants' arguments that they lack standing to bring their claims based on alleged violation of the federal constitution and federal preemption (claims 3 and 4) because the LEA Plaintiffs are political subdivisions of the State.  As discussed

---

[1] Citing to pre-enforcement challenge cases, the Parent Plaintiffs note the "long history of striking down laws before they go into effect." Opp. at 15.  But those cases have no bearing on the parents' claims because the Act is not enforced against parents.  They also do not override the Supreme Court's clear holdings that to have standing based on future harm, a plaintiff's injury must be "certainly impending" and not simply "possible." *Clapper*, 568 U.S. at 409.  Moreover, Plaintiffs have not satisfied the standard for a pre-enforcement challenge. *See Foothills Christian Church*, 2023 WL 4042580, at *16.

4

1   in the Motion, the Ninth Circuit has long held that political subdivisions lack standing to

2   challenge state law on constitutional grounds, including alleged Fourteenth Amendment and

3   Supremacy Clause violations, in federal court.  Mot. at 10-11 (citing *City of South Lake Tahoe v.*

4   *Cal. Tahoe Regional Planning Agency*, 625 F.3d 231, 233 (9th Cir. 1980) *cert. denied,* 449 U.S.

5   1039 (1980) (*South Lake Tahoe*), and its progeny.)

6        The LEA Plaintiffs "recognize" the rule that "political subdivisions lack standing to sue

7   their State for violating their constitutional rights," and  concede "it is true that the Ninth Circuit

8   at one time applied the rule cited by the Defendants to bar Supremacy Clause/preemption

9   challenges," but argue that the Supreme Court's subsequent development of standing doctrine has

10  "hollowed out whatever conceptual force *South Lake Tahoe* might once have had."  Opp. at 18

11  (citing *South Lake Tahoe*), 19.  This argument ignores the many Ninth Circuit decisions issued

12  since *South Lake Tahoe* through the present, which confirm the continued applicability of the

13  rule.  *See* Mot. at 10-11.  Moreover, the LEA Plaintiffs fail to acknowledge that shortly before

14  they filed their Opposition, the Ninth Circuit once again affirmed the *South Lake Tahoe* standing

15  rule, holding that the City of Huntington Beach lacked standing to sue State officials and entities

16  to challenge certain state laws on federal constitutional grounds, because the City is a political

17  subdivision.  *See City of Huntington Beach v. Newsom*, 2024 WL 4625289 at *1 (9th Cir. Oct. 30,

18  2024).  The Ninth Circuit reaffirmed the "per se" standing rule in the strongest terms:

19       The City's claims are foreclosed by our decision in *South Lake Tahoe*, which forbids
         political subdivisions and their officials from challenging the constitutionality of state
20       statutes in federal court. 625 F.2d at 233–34, 238. We have consistently applied that
         rule ever since. *See, e.g., Burbank-Glendale-Pasadena Airport Auth. v. City of*
21       *Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) ("This court . . . has not recognized
         any exception to the per se [standing bar], and the broad language of *South Lake*
22       *Tahoe* appears to foreclose the possibility of our doing so."). *Id.*

23  The LEA Plaintiffs' further argument that the Court should not apply the rule here because a few

24  Ninth Circuit judges have suggested an en banc consideration of the doctrine in *concurring or*

25  *dissenting* opinions (Opp. at 19) lacks merit.  To date, the Ninth Circuit has not limited the "per

26  se" standing rule or reconsidered the rule en banc.

27       Plaintiffs also argue that intervening Supreme Court authority regarding standing, starting

28  with *Lujan v. Defenders of Wildlife*, 504 U.S. 555, is "clearly irreconcilable" with prior Ninth

1    Circuit authority, so the district court should reject prior Ninth Circuit authority as having been

2    effectively overruled.  Opp. at 19.  Yet, in the years since the Supreme Court issued *Lujan*, the

3    Ninth Circuit has continued to consider itself bound to apply the *South Lake Tahoe* standing rule,

4    as reflected in numerous cases, including in the face of similar arguments that the rule is no

5    longer good law in light of Supreme Court standing cases and other circuit decisions*.  See* Mot. at

6    10-11 (citing cases); *see e.g.*, *Burbank-Glendale-Pasadena Airport Auth.,* 136 F.3d at 1364;

7    *Okanogan School Dist. #105 v. Super. of Pub. Inst.*, 291 F.3d 1161, 1162-66 (9th Cir. 2002).

8    Under the law of the circuit doctrine, this Court must follow published Ninth Circuit precedent.

9    *See, e.g.*, *California v. U.S. Department of Homeland Security*, 476 F.Supp.3d 994, 1012-13

10   (N.D. Cal. 2020).[2]  Thus, the LEA Plaintiffs lack standing to bring their claims.

### C.    The Court Lacks Jurisdiction to Hear CVUSD and AUHSD's Claim for Declaratory Relief

        In response to Defendants' argument that the Court lacks supplemental jurisdiction over

Plaintiffs CVUSD and AUHSD's state-law based "alternative" claim for declaratory relief (Claim

5), those Plaintiffs contend the claim actually "arises under federal law because District Plaintiffs

seek a ruling stating that their policies are constitutional and in line with federal law."  Opp. at 20.

This contention is erroneous—the "alternative" declaratory relief claim is based on state law.  As

previously explained, CVUSD and AUHSD allege that their parental notification policies "which

do not discuss or even mention gender," are either outside the scope of the Act or do not violate

it, and request a declaration to this effect, "in the event" their separate request for a declaration

that the Act is preempted by and violates the First and Fourteenth Amendments (Claim 4) "is

denied."  FAC 95-96.  If, as the districts now argue, the premise of their "alternative" declaratory

relief claim is that their policies do not violate the Act because it is preempted, then it is not

actually an "alternative" to their other declaratory relief claim based on federal preemption.

---

[2] In another failed attempt to avoid application of *South Lake Tahoe,* the LEA Plaintiffs allege that they can assert federal constitutional law as a "defense," because the Attorney General and the California Department of Education (CDE) "have sued school districts over their parental notification policies, and the districts have raised constitutional law as a defense" in state court actions. Opp. at 18-19.  But the *South Lake Tahoe* rule does not address standing to bring a claim in *state court*, where the Attorney General and the CDE brought those actions.

1    In any event, even if CVUSD and AUHSD are permitted to argue around their FAC and

2   assert that their "alternative" declaratory relief claim is also based on the Supremacy Clause, they

3   still would lack standing to bring this claim.  As discussed, *supra*, political subdivisions of the

4   State, including school districts, lack standing to bring federal court claims challenging State law

5   on federal constitutional or Supremacy Clause grounds.  *See e.g.*, *City of South Lake Tahoe*, 625

6   F.3d at 233; *Okanogan Sch. Dist.* #105, 291 F.3d at 1165-66.

7    Finally, to the extent the Court rejects CVUSD and AUHSD's argument, and determines

8   that the "alternative" claim for declaratory relief is based in state law, then, for the unrebutted

9   reasons set forth in Defendants' Motion, the Court lacks jurisdiction to hear the claim because

10   Plaintiffs cannot meet the requirements for supplemental jurisdiction.  Mot. at 11-12.

11   **D.    The Governor Is Entitled to Eleventh Amendment Immunity**

12    Plaintiffs' arguments that the Governor is not entitled to Eleventh Amendment immunity

13   lack merit.  They contend he has a "fairly direct" connection with enforcement of the Act. Opp. at

14   23-24.  But, none of their arguments support applying the exception set forth in *Ex Parte Young*,

15   209 U.S. 123 (1908), here, given the Governor's lack of enforcement role with respect to the Act.

16    As set forth in the Motion, where there is a challenge to state law, the Governor must have a

17   direct role with respect to enforcing the law to overcome Eleventh Amendment immunity.  *See,*

18   *e.g.,* Mot. at 12-13; *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-847 (9th Cir. 2002)

19   (relevant inquiry is "whether a named state official has direct authority and practical ability to

20   enforce the challenged statute.")  Here, Plaintiffs have failed to show the Governor has any

21   enforcement role with respect to the Act.  For example, they argue that the Governor has a "fairly

22   direct" supervisory role over California's education policy and enforcement because he appoints

23   members of the State Board of Education (SBE), and some deputy superintendents.  Opp. at 22,

24   23.  But, Plaintiffs have failed to show the Governor has a direct supervisory role over SBE

25   members or any deputy superintendent by virtue of his appointment power, or even allege that

26   they have any role in enforcing the Act.  *See, e.g.*, *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d

27   697, 704 (9th Cir. 1992) ("general supervisory power over the persons responsible for enforcing

28   the challenged provision will not subject an official to suit.")

1    Plaintiffs' additional arguments that the Governor's "duty to oversee budgetary decisions

2    and other aspects of state and federal law," and "his regulatory responsibilities in ensuring

3    compliance with federal education laws," amount to "enforcement power" are also meritless.

4    Opp at 23-24.  The relevant inquiry is whether the Governor has a direct role with respect to

5    enforcement *of the Act*, not any alleged general responsibilities related to the State education

6    budget or State compliance with federal mandates.  The federal cases addressing Eleventh

7    Amendment immunity cited by Plaintiffs do not hold otherwise, and are distinguishable.  *See,*

8    *e.g*., *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110 (E.D. Cal. 2002) (Governor had

9    "direct and substantial involvement" with tribal gaming compacts); *Duke Energy Trading and*

10   *Marketing L.L.C. v. Davis*, 267 F.3d 1042, 1052 (9th Cir. 2001) (Governor issued

11   "commandeering orders" with respect to energy contracts).  Indeed, *Sweat v. Hull*, 200 F. Supp.

12   2nd 1162, 1174-75 (D. Arizona 2001), which Plaintiffs contend held that Arizona Governor Hull

13   was subject to jurisdiction under *Ex Parte Young* due to her oversight of a specific department

14   that she was entitled to direct (Opp. at 22), actually held the opposite.  The court determined that

15   "because Plaintiffs have failed to 'affirmatively and distinctly' establish that their claims against

16   Hull are not barred by the Eleventh Amendment, the Court must dismiss such claims."  *Id*. at

17   1175 (citations omitted).  Plaintiffs' claims against the Governor are likewise barred.

18   **II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE NOT**

19   **COGNIZABLE AS A MATTER OF LAW**

20   **A.   Parent Plaintiffs Have Failed to State a Valid Due Process Claim**

21   **1.   Parent Plaintiffs cannot meet the requirements for a facial challenge**

22   Plaintiffs argue that the requirement to establish that "no set of circumstances exists under

23   which the Act would be valid" in order to state a facial claim, as set forth in *United States v*

24   *Salerno*, 481 U.S. 739, 745 (1987), is no longer valid.  The Supreme Court has recently affirmed

25   the continued viability of *Salerno*'s "no set of circumstances" standard for facial challenges to

26   statutes.  *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024).  Even *Washington State Grange*

27   *v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008), which Plaintiffs rely upon,

28   does so, while also recognizing an additional standard that a facial challenge must fail where the

8

statute has a "plainly legitimate sweep."  Plaintiffs' facial claims fail to meet either standard.

Plaintiffs argue that they need not prove that the Act is invalid in every circumstance, *see* Opp. at 25, but fail to address any of the *numerous* circumstances Defendants raised where the Act would be valid, even assuming parents had a substantive due process right to forced notification (which they do not).  *See* Mot. at 14-15.  In any event, Defendants have also shown that the statute has a "plainly legitimate sweep," given the State's compelling interest in protecting LGBTQ students from harm, the numerous factual circumstances where the Act would be valid as applied, and the Act's savings clause which ensures that its prohibitions do not conflict with state or federal law.  *See* Mot. at 4-5, 14-15, 19-20, 24.

      **2.**     **Parents lack a substantive due process right to notification of students' gender identity, gender expression, or sexual orientation**

          **a.**    **General parental rights of control over their children do not include forced disclosure by schools**

Parent Plaintiffs argue that the Act infringes on parents' fundamental right to direct the upbringing of their children, but fail to cite any cases supporting the vast expansion of such a right to force notification by schools to parents regarding students' gender identity, gender expression, or sexual orientation.  Opp. at 25-27.  Instead, as set forth in the Motion, the Ninth Circuit, based on longstanding Supreme Court precedent, has confirmed that while parents have a substantive due process right to choose their child's educational forum, they do not have a substantive due process right to direct their chosen school's policies, administration, or curriculum.  Mot. at 15-17.  Moreover, Parent Plaintiffs fail to recognize that the parental substantive due process rights to control and direct their child's upbringing, on which they rely, have "limited scope" in the educational context.  *See, e.g.*, *Norwood v. Harrison*, 413 U.S. 455, 461 (1973); *Runyun v. McCrary*, 427 U.S. 160, 177 (1976).  Nor does the Act interfere with the right of parents to make intimate decisions regarding their children, as Parent Plaintiffs contend. The Act does not require or prohibit any action by parents.  *See, e.g., Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*, 503 F.3d 256, 263-64 (3rd Cir. 2007) (no parental right at stake where public health clinics gave contraception to minors without parental consent, because clinics did not compel the minors in any way, including not forbidding them from talking with

9

1   their parents).  Parents remain free to discuss their student's gender identity, gender expression,

2   and sexual orientation with them, and to visit their schools and classrooms.

3          Furthermore, Parent Plaintiffs simply ignore the many recent cases in which district courts

4   held that parents did not have a substantive due process right to be notified of their student's

5   transgender or gender nonconforming identity by the school district.  *See* Mot. at 17 (listing five

6   recent district court cases).  Parent Plaintiffs instead cite two district court cases for the

7   proposition that "parental rights include the right to both notice and consent regarding a child's

8   social transition" (Opp. at 28), which do not actually support that proposition.  *See Tenn. v.*

9   *Cardona*, 2024 WL 3019146, at *30-31 (E.D., Ky. June 17, 2024), *appeal docketed*, No. 24-5588,

10  (6th Cir. June 26, 2024) (addressing a challenge to Title IX regulation defining "sex" to include

11  gender identity); *Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*, 2022 WL 1471372, at *8 (D. Kan.

12  May 9, 2022) (determining that the First Amendment's Free Exercise Clause was likely violated

13  by forcing teachers to conceal a student's preferred pronouns from their parents, but not

14  addressing any substantive due process parental right to forced notification.)

15              **b.    Plaintiffs have failed to show that the Act implicates any**
                        **parental rights related to medical care for children**
16

17         Parent Plaintiffs argue that there is a substantive due process right for parents to make

18  important medical decisions for their child and for children to have those medical decisions made

19  by their parents, not the state.  Opp. at 27.  Such parental rights are irrelevant here because the

20  Act does not address or impact medical care or treatment.

21         Contrary to Plaintiffs' argument, respecting a student's decision to socially transition at

22  school does not constitute medical or psychological treatment.[3]  Medical treatment is what

23  licensed healthcare professionals provide their patients in the course of diagnosis and treatment,

24  consistent with the regulated practice of medicine.  *See, e.g., Shanks v. Blue Cross & Blue Shield*

25         [3] Plaintiffs cite to the World Professional Association for Transgender Health (WPATH)
    recommendations for mental health providers to "provide guidance to parents/caregivers and
26  supports to a child when a social transition is being considered," and facilitate the parents'
    success in making informed decisions about the parameters of a social transition, as well as
27  WPATH's statement that "social transition for children typically can only take place with the
    support and acceptance of parents/caregivers. Opp. at 27-28.  But recommendations
28  acknowledging the benefit of parental support for youth who socially transition do not support the
    argument that social transitioning constitutes medical and psychological treatment.

*of Wis.*, 979 F.2d 1232, 1233 (7th Cir. 1992).  Accordingly, courts have recognized a parental

substantive due process right related to medical care for their children with respect to in-patient

hospitalization for mental illness, *Parham v. J.R.*, 442 U.S. 584, 604 (1979), medical examination

of a child in protective custody, *Mann v. Cnty. of San Diego,* 907 F.3d 115, 1162 (9th Cir. 2018),

spinal taps, *Mueller v. Auker,* 700 F.3d 1180, 1186-89 (9th Cir. 2012), and blood draws to test for

disease, *Kanuszewski v. Michigan Dep't of Health and Hum. Serv.,* 927 F.3d 396, 411-12, 415-16

(6th Cir. 2019).  By contrast, respecting a transgender person's identity, asking for and using their

name and pronouns, is not a plausible allegation of medical treatment—it is not regulated as a

form of medical care, nor does doing so require any diagnosis or licensure.  Anyone can respect a

transgender person's identity, and doing so is a matter of courtesy and respect, not medical care.

*See, e.g.*, *Foote v. Town of Ludlow*, 2022 WL 18356421 at *5 (D. Mass. Dec. 14, 2022)

("Plaintiffs have failed to adequately allege that Defendants provided medical or mental health

treatment . . . simply by honoring their requests to use preferred names and pronouns at school");

*Regino v. Staley*, 2023 WL 4464845 at * 3(E.D. Cal. July 11, 2023) (rejecting conclusory

allegation that permitting social transitioning at school constitutes medical treatment).[4]

The mere fact that social transition has recognized benefits for some children's well-being

does not render the act of respecting that decision medical treatment giving rise to a parental

substantive due process right.  For example, "aerobic exercise" has recognized benefits and is

thus, at times, described as a "treatment."  *Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2009).

But it is not credible to claim that schools provide medical treatment to students by permitting

them to run on a playground.  Because the Act does not implicate medical interventions, Parent

Plaintiffs' reliance on parental rights related to their children's medical care is misplaced.

### 3.   Plaintiffs have failed to show that the Act does not survive review, whether rational basis or strict scrutiny applies

Parent Plaintiffs argue that strict scrutiny applies because parents have a "fundamental

liberty interest in directing the upbringing of their children."  Opp. at 28.  This is incorrect—strict

---

[4] Parent Plaintiffs cite *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1212 (S.D. Cal. 2023) for the proposition that a policy excluding parents from a child's "gender-related choices" is "medically unwise."  But that statement in *Mirabelli* was dicta because there was no parental substantive due process claim before the Court at the time it issued the decision.  *See id.*

1    scrutiny does not apply, because they have failed to allege a substantive due process right to

2    forced notification policies. Mot at 19. Nonetheless, Defendants cited case law demonstrating that

3    the State has a compelling (and legitimate) interest in protecting LGBTQ students from abuse,

4    rejection, bullying, and harassment, and in fostering a safe and supporting school environment

5    where students are not outed before they are ready.  Mot. at 19-20.  This compelling interest of

6    the State, which supported the adoption of the Act, is set forth in the Act's Legislative findings.

7    RJN, Exh. 1, § 2.  In response, Parent Plaintiffs simply argue that "[w]hile Defendants may have

8    an interest in protecting transgender youth from discrimination," the State does not have a

9    compelling interest in protecting students from forced disclosure because there is a "presumption

10   that fit parents act in the best interests of their children."  Opp. at 29 (citing *Troxel v. Granville*,

11   530 U.S. 57, 68 (2000)).  Yet, a rebuttable presumption about "fit" parents does not make the

12   State's strong interest in protecting LGBTQ students from forced outing any less compelling.

13         Defendants also demonstrated that the Act is narrowly tailored in furtherance of the State's

14   compelling interest.  Mot. at 20.  Plaintiffs failed to address that argument.  *See Ramirez v.*

15   *Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197 (N.D. Cal. 2013) (argument is conceded when party

16   fails to address the argument in its opposition).

17         **B.    Parent Plaintiffs Have Failed to State a Valid Free Exercise Claim**

18         In their opposition, Parent Plaintiffs fail to address—and thus concede—the Motion's

19   arguments that the Act is neutral to religion and that the Ninth Circuit has foreclosed their alleged

20   "hybrid rights" theory.  *See* Mot. at 31-32; Opp. at 29-32.  Instead, they now argue the Act is not

21   generally applicable because, they argue, it allows for the disclosure of students' private

22   information in some instances and creates discretionary exemptions.  Opp. at 31.  This is both a

23   fundamental misunderstanding of the Act and the Free Exercise framework.

24         A law is not generally applicable, and subject to strict scrutiny, if it "treat[s] any

25   comparable secular activity more favorably than religious exercise."  *Tandon v. Newsom*, 593

26   U.S. 61, 62 (2021).  This includes when a law does not exempt religious activity from regulation,

27   but does exempt comparable secular activities.  *See Church of Lukumi Babalu Aye v. City of*

28   *Hialeah*, 508 U.S. 520, 542-43 (1993).  In this analysis, "[c]omparability is concerned with the

12

1   risks various activities pose," as measured "against the asserted government interest that justifies

2   the regulation at issue." *Tandon*, 593 U.S. at 62. Thus, a law lacks general applicability if it

3   "prohibits religious conduct while permitting secular conduct that undermines the government's

4   asserted interests in a similar way." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

5          Parent Plaintiffs attempt to argue that the Act treats comparable secular activity more

6   favorably because it allows for mandatory disclosure of student information when the student

7   consents or when required by law.  Opp. at 31.  But they fail to allege or argue *why* this provision

8   of the Act actually poses a comparable risk to a religious exemption.  *Id.*  Nor can they.  For

9   instance, as Defendants explained in the Motion, state law in some instances may require parental

10  notification of significant risks to student safety, which may include disclosing information about

11  a student's gender identity.  Mot. at 15.  Such an exemption does not undermine the State's

12  interest in protecting the health and safety of students; it actually furthers this interest.  *See Doe v.*

13  *San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177-78 (2021) (medical exemption from vaccine

14  mandate served the mandate's primary interest and did not undermine the school district's

15  "interests as a religious exemption would").  By contrast, allowing for a wholesale religious

16  exemption to the Act would harm this interest by requiring disclosure based on the parents'

17  religious beliefs (a seemingly impossible metric for schools to track), even if doing so would

18  expose LGBTQ students to abuse and harm at home.  Such risks of family rejection and abuse are

19  not hypothetical.  *See* RJN Ex. 2 at 5-8; Mot. at 2-4; *Doe v. Horne*, 115 F.4th 1083, 1092 (9th Cir.

20  2024) ("Attempts to 'cure' transgender individuals by forcing their gender identity into alignment

21  with their birth sex are harmful"); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1064 (9th Cir.

22  2022) (recognizing findings that conversion therapy on minors with gender dysphoria "puts

23  individuals at a significant risk of harm"); *Pickup v. Brown*, 740 F.3d 1208, 1223 (9th Cir. 2014)

24  (similarly for ban on "sexual orientation change efforts").  Therefore, allowing disclosure to

25  protect student safety does not endanger the State's "interests in a similar or greater degree than"

26  allowing for a wholesale religious exemption would.  *Lukumi*, 508 U.S. at 543.

27          Their argument that the Act allows for discretionary exemptions is similarly half-baked—

28  but also relies on a misunderstanding about what the Act does.  *See* Opp. at 31.  Although a law is

13

1   not generally applicable if it creates a mechanism for individual, discretionary exemptions by

2   government officials, *Fulton*, 593 U.S. at 534-535, the "mere existence of an exemption that

3   affords some minimal governmental discretion does not destroy a law's general applicability,"

4   *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015).  Rather, an exemption must

5   necessarily lead to a "formal and discretionary mechanism for individual exceptions," *Tingley*, 47

6   F.4th at 1088 (citing *Fulton*, 593 U.S. at 533-34), based on a "an open-ended, purely discretionary

7   standard," *Stormans*, 794 F.3d. at 1081.  For instance, in *Fulton*, a city contract at issue included

8   an anti-discrimination provision that expressly authorized a city official to grant individual

9   exemptions based on "his/her sole discretion."  *Fulton*, 593 U.S. at 535.  Here, by contrast, the

10  Act does not create any such formal mechanism for discretionary exemptions; in fact, it does not

11  include any discretionary exemptions at all.  Plaintiffs point to the Motion's statement that school

12  districts may adopt "nuanced policies that allow—but do not mandate—disclosure in certain

13  instances."  Opp. at 31.  But this is not a part of or formal exemption in the Act.  It is an

14  explanation of the Act's limited scope within the broader context of state and federal law, notably

15  that the Act only prohibits specific forced-outing policies and thus, in itself, does not prohibit

16  disclosure in all instances.  Further, the Act does not set out in what instances disclosure is

17  permissible—which would be determined by a local district policy and not State law—and

18  Plaintiffs' argument that these instances are "discretionary" is mere conjecture untethered to any

19  actual local policy.  In sum, the Act is neutral and generally applicable, and thus it is subject to

20  rational basis review, which it easily passes.  But even if it were subject to strict scrutiny, it

21  satisfies that standard as well for the reasons stated in the Motion and above.  Mot. at 29-30.

22      **C.     Plaintiffs Fail to Show that the Act is Preempted by FERPA**

23          Plaintiffs' argument that the Act is unconstitutional because FERPA preempts it (Opp. at

24  32-33) misunderstands FERPA.  Plaintiffs assume that FERPA requires "informing parents of

25  their child's gender identity" (Opp. at 16), but that is incorrect.  FERPA provides parents the

26  rights of *access upon request* to written documents that fall within the definition of "education

27  records," and to correct such records, but does not provide any right to be *affirmatively notified*

28  when a record related to their student reflects a different name or pronoun.  *See* 20 U.S.C. §

                                                                14

1  1232g(a)(1)(A), (a)(2), (a)(4); Mot. at 23-24.  The rights provided to parents under FERPA are

2  not implicated by the Act, which simply prohibits school districts from *mandating* disclosure of

3  information about a student's sexual orientation, gender identity, and gender expression without

4  consent.  *See* RJN, Exh. 1 at §§ 4-6 (adding Cal. Educ. Code §§ 220.1, 220.3, 220.5).

5          Furthermore, Plaintiffs' argument that the Act conflicts with FERPA willfully ignores that

6  the Act's relevant prohibitions are expressly limited by the phrase "unless otherwise required by

7  state or federal law," which requires compliance with FERPA.  *See* Mot. at 4-5, 20, 24; RJN, Exh.

8  1 at § 5 (adding Cal. Educ. Code § 220.3(a)), § 6 (adding Cal. Educ. Code § 220.5(a).)  There is

9  no conflict between the Act and FERPA, as the Act itself does not preclude districts from

10  providing "education records" to parents who request them under FERPA, even if they contain

11  information related to a student's sexual orientation, gender identity, or gender expression.

12         **D.    The LEA Plaintiffs' Declaratory Relief Claim Fails**

13         The LEA Plaintiffs do not dispute that their declaratory relief claim is based on their

14  allegations that the Act violates and is preempted by the First and Fourteenth Amendments.  *See*

15  FAC ¶¶ 90-92.  Because it is derivative of Parent Plaintiffs' claims that the Act violates the First

16  and Fourteenth Amendments, the LEA Plaintiffs' claim must be dismissed for the same reasons

17  as Parent Plaintiffs' underlying claims.  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097

18  (N.D. Cal. 2022) (dismissing declaratory relief claim after underlying claims dismissed).

19         **E.    CVUSD and AUHSD's Alternative Declaratory Relief Claim Fails**

20         Plaintiffs fail to address Defendants' argument that CVUSD and AUHSD are not entitled to

21  their requested "alternative" declaration, because their parental notification policies flatly violate

22  and do not fall outside of the Act's scope.  Their only possible substantive rebuttal is in CVUSD

23  and AUHSD's prior argument that the Court has jurisdiction to hear this claim, where they allege

24  that their policies "do not violate AB 1955 because they are consistent and in line with federal

25  law."  Opp at 20.  Given their argument that this claim is based on the same underlying arguments

26  as the other claims, it too must be dismissed.  *Hammerling*, 615 F. Supp. 3d at 1097.

27                                  **CONCLUSION**

28         For the reasons above, the Court should dismiss Plaintiffs' claims, without leave to amend.

15

1

2
    Dated:  November 25, 2024                    Respectfully submitted,

3                                        ROB BONTA
                                        Attorney General of California
                                        DARRELL W. SPENCE

4                                        Supervising Deputy Attorney General

5

6

7                                        JENNIFER A. BUNSHOFT
                                        Deputy Attorney General

8                                        *Attorneys for Defendants*

9    SA2024303201
    44415600

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

# CERTIFICATE OF SERVICE

Case Name:  **Chino Valley Unified School**          No.    **2:24-cv-01941-JDP**
            **District, et al. v. Gavin**
            **Newsom, et al.**

I hereby certify that on <u>November 25, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 25, 2024</u>, at San Francisco, California.

| G. Guardado | /s/ *G. Guardado* |
|:---:|:---:|
| Declarant | Signature |

SA2024303201
67255538.docx